IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERSE, INC.,                              )
                                         )
      Plaintiff,                    )
v.                                        )        No. 08CV 4722
                                         )
3D EXHIBITS, INC.,                        )        Judge Holderman
                                         )
      Defendant.                    )        Magistrate Judge Mason

## MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DENY OR STAY, PLAINTIFF'S MOTION FOR PRESERVATION OF EVIDENCE, OR IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY

Now comes Defendant, 3D Exhibits, Inc. ("3D"), by and through its attorneys, PICCIONE, KEELEY AND ASSOCIATES, LTD., and pursuant to Federal Rules of Civil Procedure 26 and 34 and Local Rule 37.2  moves this Honorable Court to Strike, or in the alternative, Deny or Stay Plaintiff's Motion for Preservation of Evidence, or in the Alternative, for Expedited Discovery ("Motion"), and in support thereof, states as follows.

1.     Nelson Corazzari ("Corazzari") is an employee of 3D, having begun his employment with 3D on July 30, 2008.

2.     Corazzari is a former sales representative of Plaintiff.

3.     3D is in the business of designing and building trade show exhibits; 3D does business in Wisconsin and elsewhere, and is one of Plaintiff's competitors.

4.     After 3D hired Corazzari, 3D and Plaintiff's attorneys (from both Wisconsin and Illinois) participated in telephone conferences to discuss Plaintiff's concerns with respect to Corazzari's employment with 3D, although Corazzari was an employee at-will of Plaintiff.

Affidavit of Patrick C. Keeley, attached hereto as Exhibit A and incorporated herein by reference.

5.    A subsequent in-person conference between the parties and their attorneys related to this matter was scheduled for Thursday, August 14, 2008, but Plaintiff cancelled the conference on Wednesday afternoon claiming that Plaintiff's attorneys were unavailable because of a mediation. However, Plaintiff's counsel did not return several telephone calls or emails attempting to reschedule the in-person meeting. Id.

6.    Instead, on August 20, 2008, Plaintiff filed suit against Corazzari in the Waukesha County Circuit Court in Wisconsin ("Wisconsin Action") based on virtually the same factual allegations contained in Plaintiff's Complaint herein. A copy of Plaintiff's complaint filed in the Wisconsin Action is attached hereto as Exhibit B.

7.    An ex parte Motion for Preservation of Evidence, Expedited Discovery, To Shorten Time for the Production of Documents and Entry Upon Land to Inspect, Test and Copy Tangible and Intangible Things was filed in the Wisconsin Action with the Complaint. A copy of that motion is attached hereto as Exhibit C hereto. The motion for a writ of assistance was summarily denied in the Wisconsin Action on August 20, 2008.

8.    On August 25, 2008 the Court in the Wisconsin Action denied Plaintiff's Motion for Expedited Discovery and entered an order requiring Corazzari to preserve the evidence and file a report of his computer expert. (See Affidavit of Patrick C. Keeley – Exhibit A.)

9.    Also on August 20, 2008, Plaintiff filed the instant Complaint against 3D in this Court, even though the Wisconsin Action and this Complaint are based upon the same factual allegations against Corazzari and 3D does business in Wisconsin and is amenable to suit in Wisconsin. Affidavit of Gene Faut is attached hereto as Exhibit D and incorporated herein by reference.

10.    Plaintiff has filed a Motion for Preservation of Evidence and Expedited Discovery in both this Court and the Wisconsin Action seeking the same relief.  Despite that Plaintiff could have clearly filed its claim against 3D in the Wisconsin Action, for tactical purposes, Plaintiff filed this action against 3D seeking state court claims based solely on diversity jurisdiction.  This action against 3D is based upon the same operative facts alleged against Corazzari in the Wisconsin Action.  Plaintiff clearly is forum shopping and seeking two bites at the apple at each stage of the litigation including its preliminary motion for expedited relief for full access to all of 3D's computers where such expedited and extraordinary relief is not appropriate.

11.    After the complaints were filed, 3D's attorney has assured Plaintiff that it will preserve all relevant evidence, and offered, for example, to image the computer Corazzari has used at 3D and to hold such image until agreement of the parties or order of Court.  3D has in fact retained a computer forensic expert to image this computer and Nelson's laptop, phone, external devices and camera and this forensic expert is holding and preserving this evidence.  (See Exhibit A.)

12.    As Plaintiff acknowledged in the Wisconsin Action, when Corazzari resigned on July 10, 2008, 40 days ago, he informed the Plaintiff in his resignation letter that he had removed certain personal non-informational software function programs and items (like photos) from his computer.  These programs do not contain any documents, files or information.  Rather, these programs allow the computer to conduct a certain function.  For instance, the AOL Messenger program merely allowed Corazzari to instant message his friends but this program does not contain the actual instant messages or any other data or information.  Plaintiff never objected to this removal by Corazzari.  In fact, many of the programs that Plaintiff's forensic expert states were removed from Corazzari's laptop were the same exact personal programs that Corazzari specifically notified Plaintiff upon his resignation that he was removing from his computer.  A portion of his resignation letter, attached to Plaintiff's Wisconsin complaint as Exhibit A, states:

> "Due to the malfunction and consequent deletion of all of my data on the external hard drive that was provided to me by Corporate IT, I

3

> began to keep all compute files in this location [files labeled "Current
> Projects"].    Likewise, I have removed all personal (non Derse
> provided) programs such as ITunes, photos, personal ireless router
> card, HP photo & printing software and AOL Messenger from this
> laptop."

Corazzari has described the programs he removed in greater detail in his Affidavit, attached
hereto as Exhibit E and incorporated herein by reference.  3D has attached the Affidavit of
Corazzari in part, to initially address the fact that Plaintiff's action against 3D lacks merit and
certainly does not support the extraordinary relief sought against 3D.

13.    Despite the foregoing, Corazzari's removal of those personal programs is the primary
basis for Plaintiff's allegations in the Complaint, made upon information and belief, that
Corazzari deleted Plaintiff's programs and electronic files so that no one could review his
electronic communications and information sharing files.  Complaint, Paras. 20 and 21.

14.    Furthermore, nowhere in the Affidavit of Plaintiff's forensic expert filed in the
Wisconsin Action (Steve Haenchen) (and attached and incorporated herein as Exhibit F) does
he present any credible evidence that Corazzari downloaded or copied Plaintiff's confidential
customer information or any other data containing Plaintiff's alleged confidential and trade
secret information.  Plaintiff's forensic expert merely states and confirms what Corazzari told
Plaintiff upon resignation that Corazzari removed personal programs (not data or customer
information) from his laptop, that Corazzari connected various external storage devices and a
digital camera laptop, all of which conduct is explained in Nelson's Affidavit attached
hereto, which conduct included uploading information from external drives to his computer
so that all the information would be in one place.  Despite the fact that many of Plaintiff's
allegations are based upon information and belief and there is not credible evidence that
Corazzari took any alleged confidential information or trade secrets, Plaintiff claims that it is
entitled to immediate and unfettered access to 3D's computers.

15.    The substantive allegations of Plaintiff's Complaint against 3D are as follows:

a.    that Corazzari is allegedly performing the same duties for 3D as he did for Plaintiff, so that his employment will result in the inevitable disclosure of Plaintiff's trade secrets to 3D (Count I, Misappropriation of Trade Secrets, Para. 48);

b.    that 3D "colluded" with Corazzari in Corazzari's breach of his fiduciary duties to Plaintiff, or, upon information and belief, "induced  and knowingly participated in" Corazzari's alleged breaches of his fiduciary duties to Plaintiff (Count II, Inducement of Breach of Fiduciary Duty and Common Law Duties, Paras. 64, 65);

c.    that 3D contacted customers of Plaintiff, one of its competitors, and hired away its at-will employees (Count III, Tortious Interference With Prospective Business Advantage, Paras. 72, 74);

d.    and that 3D and Corazzari have "knowingly and voluntarily agreed to conspire to build 3D's business unlawfully and to damage Derse's business through unlawful means." (Count IV, Civil Conspiracy to Commit Tortious Interference, Para. 79).

16.    There is not a single factual allegation in the Complaint or Motion that 3D has deleted or taken any other improper action with respect to electronic data or information.  The allegation in Paragraph 8 of Plaintiff's Motion that "[g]iven Corazzari's unlawful conduct while still employed with [Plaintiff], it is likely that he, now an agent of 3D, or others at 3D, may take further action to delete computer data to conceal past and additional unlawful conduct" is not based upon any pleaded fact, but misleading innuendo directed at 3D, based upon misleading innuendo alleged toward Corazzari in Paragraphs 21 and 22.

17.    Those conclusions and innuendo are the only bases for Plaintiff's request for entry of the an order to preserve evidence, (which 3D has voluntarily agreed to do), or allowing Plaintiff, one of 3D's competitors, immediate and unfettered access to its business and computers by requiring 3D to produce, or have Plaintiff's  attorneys and computer forensic experts enter the premises of 3D, its competitors to inspect:

"[C]ertain computer(s), electronic storage devices of any kind, hard drives, digital cameras, documents and things ("Computer Data") at 3D's premises." [1]

18.    Plaintiff has not filed any motion for a temporary restraining order or preliminary injunction, presumably because it realizes the absence of supporting allegations and evidence.   Instead, Plaintiff seeks to engage in an expedited and extremely broad and massive fishing expedition of a competitor's computer system based on limited conclusory allegations (many of which are based upon information and belief), to determine if Plaintiff can find some credible evidence to support a request for injunctive relief.  Such an extraordinary process is improper, fundamentally unfair, is tantamount to a mandatory temporary injunction and should be denied.

**Plaintiff's Motion Violates Local Rules and Must be Stricken**

19.    The Motion, brought pursuant to Federal Rules of Civil Procedure 27 and 34, does not (and cannot) contain the statement required by Local Rule 37.2 that Plaintiff consulted in person or by telephone and good faith attempts to resolve differences, or that counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's.  Any effort by the parties' counsel to resolve these issues came only after Plaintiff filed this Motion.  Accordingly, the Motion should be stricken. Local Rule 37.2 ("[T]his court shall hereafter refuse to hear any and all motions for discovery and production of documents under rules 26 through 37 … unless the motion includes [such] statement.")

**Plaintiff's Motion Should Be Denied because it does not allege facts necessary to enter an Order to Preserve Evidence**

20.    The Federal Rules of Evidence require parties to take steps to preserve relevant evidence in litigation, and, here, 3D has additionally made specific promises to Plaintiff in this regard.  3D has, in fact, gone beyond the promise to preserve relevant evidence.  3D has also agreed to image (and has imaged) the 3D computer used by Corazzari and hold such

---

[1] See Defendant's Motion to Dismiss For Failure to State Cause of Action, or, in the Alternative, to Stay the Action and the Memorandum of Law in Support of such Motion filed herein.

image until agreement of the parties or order of Court. Counsel for Corazzari's and 3D's correspondence to counsel for Plaintiff regarding preserving evidence are attached and incorporated herein as Exhibits G, H and I. Given those facts, where no showing has been made of a significant threat that documents will be lost or destroyed absent an immediate order, no such order should be entered. See, *In re African-American Slave Descendants' Litigation*, 2003 WL 24085346 (N.D. Ill. 2003), case modified and affirmed in part and reversed in part on other grounds, 471 F. 3d 754 (7th Cir. 2006); *United States of America v. the Boeing Co.*, 2005 WL 2105972 (D. Kan 2005).

**Plaintiff's Motion should be denied because it does not allege facts necessary to expedite discovery.**

21.    It is well-established that a plaintiff must make some *prima facie* showing of a need for expedited discovery, especially where it appears that the suit is "stretched to make a colorable suit [against the defendant]. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D. Ill. 2000). Plaintiff has not made such allegations here. While courts have often used a test similar to that required for entry of a preliminary injunction to determine whether expedited discovery is proper, weighing factors such as whether irreparable injury coupled with an inadequate remedy at law will occur, the *Merrill Lynch* court instead applied a reasonableness test, since the request for expedited discovery was to allow the plaintiff to prepare for a motion for preliminary injunction. Other courts have applied a similar test and denied requests for expedited discovery where a motion for preliminary injunction was not pending (as is here) and the request, as here, was overbroad. *Dimension Data North America, Inc. v. Netstar-1, Inc.*, 226 F.R.D. 528 (ED NC. 2005). There, in rejecting the motion, the court held that

"[t]he damage associated with such breach in the intervening time period can be readily calculated and awarded to plaintiff. Plaintiff has not otherwise alleged that its entire business will be irreparably damaged or lost due to the actions of defendants in the intervening time period. Finally, plaintiff has not alleged that the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken now. Accordingly, the court finds that plaintiff will not be irreparably harmed by

engaging in standard discovery procedures as set out in the Federal Rules of Civil Procedure." **Id.**

   The same is true here.

### In the Alternative, the Motion Should be Stayed Pending 3D's Motions to Dismiss and/or Stay Proceedings

22. 3D has filed herewith a Motion to Dismiss for Failure to State a Cause of Action or, alternatively, requesting the Court to stay this action pursuant to the doctrine set forth in ***Colorado River Water Conservation District v. United States***, 424 U.S. 800 (1976) and its progeny.

23. Where a Motion to Dismiss is pending, it is proper to stay discovery pending resolution of that motion. See, ***Bilal v. Wolf***, Slip. Op., 2007 WL 1687253 (N.D. Ill. 2007)("Numerous cases in this circuit have … allowed stays in the face of a Rule 12(b)(6) challenge. Stays of discovery are not disfavored and are often appropriate where the motion to dismiss can resolve the case at least as to the moving party…").

24. Even if 3D's Motion to Dismiss is denied, this case is properly stayed pursuant to ***Colorado River*** where, as here, judicial economy mandates that any claim arising out of the same action should be brought in the same lawsuit. ***Flipside Inc. v. Chicago Tribune Co.***, 1989 WL 2049 (N.D. Ill. 1989). A parallel state court proceeding is pending in the Wisconsin Action and exceptional circumstances exist, including the vexatious or contrived nature of the federal lawsuit. ***Clark v. Lacy***, 376 F. 3d 682 (7th Cir. 2004).

25. In such circumstances, a stay of discovery motions, including a motion to preserve evidence and or to expedite discovery, is proper where the federal court stays the action. See, e.g., ***Sunopta, Inc. v. Abengoa Bioenergy New Technologies, Inc.,*** slip op., 2008 WL 782656 (E.D.Mo.)(All proceedings, including pending motion for expedited discovery and to preserve evidence, stayed pending arbitration).

For the foregoing reasons, 3D respectfully requests this Court to:

A.    Strike Plaintiff's Motion;

B.    Deny Plaintiff's Motion;

C.    In the alternative, stay Plaintiff's Motion; or

D.    Grant such Other Relief as this Court deems just.


Dated:  August 28, 2008

                            Respectfully submitted,


                            __/s/Patrick C. Keeley_____
                            Patrick C. Keeley
                            One of the Attorneys for 3D Exhibits, Inc.

                            PICCIONE, KEELEY & ASSOCIATES, LTD.
                            Attorneys of Record for 3D Exhibits, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derse, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 08 CV 4722 |
| | ) | |
| 3D Exhibits, Inc. | ) | Judge James F. Holderman |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DENY OR STAY PLAINTIFF'S MOTION FOR PRESERVATION OF EVIDENCE, OR IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY**

# EXHIBITS A-B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08CV 4722 |
| | ) | |
| 3D EXHIBITS, INC., | ) | Judge Holderman |
| | ) | |
| Defendant. | ) | Magistrate Judge Mason |

## AFFIDAVIT OF PATRICK C. KEELEY

After first being duly sworn on oath, the undersigned states:

1.     My name is Patrick C. Keeley.  I am over the age of eighteen years and under no legal disability; if sworn as a witness I can testify competently to the facts set forth herein.

2.     I have personal knowledge of the facts contained herein.

3.     I am an attorney licensed to practice law in Illinois.  I represent 3D Exhibits, Inc. ("3D") in the above-entitled cause.

4.     In early August, 2008 I spoke with James Troupis, attorney, for Derse, Inc.  We spoke regarding Derse's concerns about 3D's hiring of Nelson Corazzari, and related matters.  We agreed we would talk again.

5.     After that telephone conversation, we scheduled an in-person conference at Derse's attorney's office between James Troupis, Gene Faut, President of 3D, Bill Haney, President of Derse and me, to discuss the matter further.  The subsequent in person conference was scheduled for August 14, 2008 at 2:30 p.m.

1



6. In the afternoon of August 13, 2008, I was informed via email that counsel for Derse had cancelled the scheduled meeting because of a mediation in which he was involved. I called and left messages and my office sent several e-mails thereafter to reschedule the conference, but I received no response.

7. Instead, on August 20, 2008, Derse filed suit against Corazzari in the Waukesha County Circuit Court in Wisconsin ("Wisconsin Action") based on virtually the same factual allegations contained in Derse's Complaint herein. A true and accurate copy of the Complaint filed in the Wisconsin Action is attached to the Motion to Strike as Exhibit B.

8. Along with the Complaint, Derse filed the same type of motion for preservation of evidence and expedited discovery in the Wisconsin Action. A true and accurate copy of this motion filed in the Wisconsin Action is attached to the Motion to Strike as Exhibit C.

9. On August 20, 2008, the Court in the Wisconsin Action summarily denied Derse's request for a writ of assistance.

10. Derse did not discuss or attempt to resolve any of the issues raised in its Motion for Preservation of Evidence, or, In the Alternative, For Expedited Discovery, Including Producing to Plaintiff, or Allowing Plaintiff Entry Upon Land to Inspect, Examine and Copy, Tangible and Intangible Things, filed in this action before filing the Motion despite the conversations we had and my repeated requests for the additional meeting. Derse did not discuss or attempt to resolve the issues raised in this Motion until after filing its lawsuit here and Wisconsin and after it attempted to have the same discovery motion granted in the Wisconsin Action first without notice and then on short notice.

11 In my and my offices' conversations with counsel for Derse, particularly on August 20, 2008, August 21, 2008,and August 22, 2008, I have stated and confirmed in

2

correspondence with Derse that 3D is aware of its obligations to preserve relevant evidence and intends to abide by that obligation. In addition, we have offered specific options to Derse, as set forth in my correspondence to Derse dated August 20, 21 and 22, 2008, attached to Defendant's Motion to Strike as Exhibits G, H and I and incorporated herein by reference.

12    The letters attached to Defendant's Motion to Strike as Exhibits G, H and I are true and accurate copies of the letters I wrote to Derse's attorney on the date the letter bears. I wrote the letters in the ordinary course of my business as an attorney for 3D; a copy of the letter was kept in the ordinary course of the business of my law firm.

13.    Pursuant to 3D's assurances, 3D (and Corazzari in the Wisconsin Action) have retained a third party computer forensic expert, Huron Consulting Group ("Huron"), to image the relevant electronic data and to preserve this evidence. It is my understanding that on Saturday, August 23 through Sunday, August 24, 2008, Huron took steps to image Corazzari's personal laptop, iphone, external storage devices and camera. It if my further understanding that on August 25, 2008, Huron took steps to image 3D's laptop issued to Corazzari. It is also my understanding that Huron is in the process of conducting its preliminary analysis of these imaged items and issuing its report as to the types of data contained on these items. Corazzari's local counsel in Wisconsin (Foley & Lardner) is also in possession of the imaged items provided by Corazzari.

14.    I argued Plaintiff's Motion to Expedite Discovery in the Wisconsin Action on August 25, 2008.  The Court in the Wisconsin Action denied Plaintiff's Motion to Expedite Discovery and ordered Nelson Corazzari to preserve the evidence and file a report of his computer expert.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Patrick C. Keeley

J:\LIT\3DEXHIBR\Derse III\AFFIDAVITS\Keeley.doc\kwrev\082808

4

## **VERIFICATION**

I, Patrick C. Keeley, verify under penalty of perjury that the foregoing is true and correct.

Executed on: _8/28/08_

_____
Patrick C. Keeley

5

STATE OF WISCONSIN     :     CIRCUIT COURT     :     WAUKESHA COUNTY

CLERK OF COURTS

DERSE, INC.,
1234 North 62nd Street
Milwaukee, WI 53213,

AUG 2 0 2008

THIS IS AN AUTHENTICATED COPY OF A
~GINAL DOCUMENT FILED IN THE
~ COURTS OFFICE WAUKESHA COUNTY

Plaintiff,

v.

NELSON CORAZZARI,
W157 N7415 Stonewood Circle
Menomonee Falls, WI 53051,

Defendant.

# 08CV2909

Case No.

Case Codes: 30303, 30106, 30701,
30704

---

## COMPLAINT

**NOW COMES** Plaintiff Derse, Inc. ("Derse"), by its attorneys, Michael Best &

Friedrich LLP, and as and for its Complaint against Defendant Nelson Corazzari ("Corazzari")

alleges and shows to the Court as follows:

### PARTIES

1.    Derse is a Wisconsin corporation with its principal place of business and

headquarters located in Milwaukee, Wisconsin and has several offices in the United States.

Derse promotes businesses that market their products and services at trade shows by designing

and installing marketing booths and related marketing materials for its clients.

2.    Corazzari is, upon information and belief, an adult citizen and resident of the

State of Wisconsin whose residence is located in Menomonee Falls, Wisconsin. Corazzari was

formerly employed by Derse for approximately 10 years as a Director of Business Development,

based at Derse's Milwaukee division.

EXHIBIT

B

## JURISDICTION AND VENUE

3.    This Court has personal jurisdiction over Corazzari under Wis. Stat. § 801.05 because Corazzari lives in Wisconsin and has been engaged in substantial and isolated activities within Wisconsin.  Moreover, Derse claims Corazzari committed acts and omissions within Wisconsin causing Derse harm and injury resulting in damages within Wisconsin.  What is more, Derse seeks to compel Corazzari to return, restore and account to Derse for things of value which were within the State of Wisconsin when Corazzari acquired possession or control over them.

4.    Venue is appropriate in Waukesha County Circuit Court pursuant to Wis. Stat. § 801.50 because Corazzari lives in Waukesha County, does substantial business in the county and where, upon information and belief, he has kept or keeps Derse's tangible personal property that is the subject of Derse's claims.

## BACKGROUND FACTS

5.    Derse realleges and incorporates Paragraphs 1 through 4 of the Complaint as if fully set forth herein.

### CORAZZARI WAS A HIGH LEVEL DERSE EXECUTIVE WHO HAD ACCESS TO DERSE'S CONFIDENTIAL INFORMATION AND TRADE SECRETS.

6.    Corazzari was a highly compensated senior Derse sales executive who was one of four business development directors for all of Derse's offices.  He had account managers who reported to him and supported his sales.  Corazzari was the primary contact for several of Derse's largest customers and potential customers.  Not surprisingly, Corazzari had a "book of business" for Derse that totaled over $7 million in annual sales.  Indeed, Corazzari had the highest sales in the Milwaukee division.

7.    As a Director of Business Development, Corazzari could and did access Derse's sales information including pricing, profit margin, cost, client, project files, and bid information.

- 2 -

Moreover, Corazzari could and did access Derse's confidential business, marketing and financial information.

8.    Derse put Corazzari on notice as long ago as September 1999 that he would have access to Derse's confidential information and trade secrets and that he was not to disclose such information to anyone outside of Derse.

**FROM JULY 8, 2008 TO JULY 10, 2008 CORAZZARI DELETED DERSE COMPUTER PROGRAMS AND FILES FROM HIS LAPTOP, ACCESSES DERSE COMPUTER FILES USING EXTERNAL HARDDRIVES AND THEN ABRUBTLY RESIGNED ON JULY 10, 2008.**

9.    On or about July 10, 2008, Corazzari abruptly resigned his employment with Derse. He had given no indication that he was leaving and purportedly was on vacation the week before he resigned. Indeed, Corazzari said he had saved money and was not sure where he was going to work. When Corazzari resigned, he informed Derse that one of the portable external hard drives issued to him by Derse "crashed" and that the Derse laptop he used while working for Derse (the "Laptop") malfunctioned and all the data on it was deleted. A true and correct copy of Corazzari's resignation letter is attached hereto as **Exhibit A.**

10.    Derse's forensic review of the Laptop shows that several program files that can be used for information sharing were deleted from the Laptop just before Corazzari resigned. Upon information and belief, the deleted programs would not have been accidentally removed or caused by malfunction. Someone needed to use a software removal program or Windows Explorer removal methods. The deleted information sharing files include: AOL Instant Messenger, AT&T Communication Manager, HP Image Sharing, Microsoft Broadband Networking, Blackberry, Safari (Web browser), Sonic (CD/DVD Writer) and Windows Live. Accordingly, Corazzari's electronic communication and information sharing programs and files

were deleted from the Laptop. Thus, Corazzari's communications and information sharing files he sent and received on his Laptop are gone.

11.     Derse's forensic review of the Laptop shows that Microsoft Office files and Internet history files that would have been deleted in the ordinary course of business usage were removed from the Laptop using software designed to remove traces of such deleted files.

12.     On numerous occasions before his resignation from Derse on July 10, 2008, Corazzari, upon information and belief, accessed, downloaded and/or copied certain computer files containing Derse's confidential and trade secret information. Indeed, Corazzari connected six external hard drive devices (thumb drives and USB drives) to the Laptop just before he resigned.

13.     On July 8 and 9, 2008 Corazzari used USB hard drive devices to access files on the Laptop. Tellingly, the USB devices he used to connect to the Laptop were not issued to him by Derse. (Derse issued two portable external hard drive devices to Corazzari in April 2008). The two portable external hard drive devices Corazzari returned to Derse upon his resignation were not the devices he used to access his Laptop files on July 8 and July 9, respectively. The devices he returned to Derse are blank. The Thumb Drive Derse issued to Corazzari was "wiped" to remove all information and the other device (a Buffalo drive) had either never been used or had been "wiped" clean using a program.

14.     At approximately 5:00 a.m. on July 10, 2008, Corazzari connected a digital camera to the Laptop. Derse uses images and photographs in its business to show its clients and prospective clients examples of its trade show marketing products. A digital camera can be used to transfer electronic files such as images and photographs from a computer.

- 4 -

15.     Corazzari did not return to Derse any of the six USB drives or the digital camera he connected to the Laptop and did not tell anyone at Derse he had connected them to the Laptop.

16.     Between July 8 and July 10, Corazzari accessed several Derse files containing client information, bids, drawings, contracts and pricing. Indeed, some of the files Corazzari accessed contain bid opportunities that were happening at the time of his resignation.

## SUMMARY OF CORAZZARI'S WRONGFUL COMPUTER ACTIVITIES JUST BEFORE HE RESIGNED

- Eight programs were deleted from the Laptop, thus removing hundreds of communication and information sharing files.

- Six external hard drives were attached to the Laptop just before Corazzari resigned.

- A digital camera was attached to the Laptop just before Corazzari resigned.

- The email file for the Laptop was removed just before Corazzari resigned.

- Corazzari accessed several Derse client, pricing, contract, and bidding electronic files and drawings just before he resigned.

17.     Upon information and belief, Corazzari deleted Derse programs and electronic files so no one could review his electronic communications and information sharing files. Moreover, he accessed Derse's electronic files so he could copy Derse's confidential information, trade secrets and commercially valuable information to compete with Derse.

## CORAZZARI UNDERMINES DERSE'S OPPORTUNITIES TO WIN BIDS AND MAINTAIN BUSINESS RELATIONSHIPS

18.     Upon information and belief, Corazzari acted to compete with Derse prior to and after his departure from Derse. While still employed by Derse, Corazzari took steps to insure Derse's bid price in a proposal to a longstanding client, NUANCE, was not lowered even though

other members of Derse's management and sales team expressed a strongly held belief that the bid price be lower than what was bid. Derse later learned that it lost the bid to 3D Exhibits, Inc. ("3D") where Corazzari went to work after leaving Derse, which is described later. Derse also learned that its bid was apparently "dead last" because of price.

19.    What is more, Corazzari transferred the installation and dismantling account from Sho-Link to a different company, 2nd Generation. Sho-Link is a co-operative owned in part by Derse and all Derse installation and dismantling work, as a general rule, goes through Sho-Link. Contrary to those practice, Corazzari transferred certain installation and dismantling work for Derse's clients to 2nd Generation.

20.    Upon information and belief, Corazzari concealed a significant bid opportunity for a potential job for Andrew – a Commscope Company ("Andrew") - before he resigned.

21.    After Corazzari left Derse, Derse received an email to Corazzari's Derse email account from Andrew concerning a request for proposals ("RFP") it sent to Corazzari on May 14, 2008. No one at Derse was aware of the RFP even though Corazzari received the request in May. Typically, such proposal requests are routed to various employees at Derse to prepare a bid. That was not done. The RFP provided potential bidders close to fifteen weeks to prepare their bids. When Derse learned of the RFP it was shortly before the bid was due. Derse was undermined from preparing and submitting a timely bid to Andrew. Tellingly, Corazzari accessed certain Derse electronic files concerning the RFP just before he resigned.

**CORAZZARI AND OTHER DERSE EMPLOYEES CONSPIRED WITH A DERSE COMPETITOR – 3D EXHIBITS, INC. ("3D") - TO RAID DERSE'S EMPLOYEES**

22.    3D has made it clear since March 2007 that it wants to acquire Derse. Indeed, in March 2007, 3D's President, Gene Faut and Executive Vice President Robert Prihoda

- 6 -

("Prihoda") stated to Derse's CEO William Haney ("Haney") that 3D wants to acquire Derse. Haney told Prihoda Derse has no interest in being acquired by or merging with 3D at this time. Since then, 3D has secretly contacted Derse employees to cause them to leave Derse and/or encourage them to shift business away from Derse.

23.     3D responded to Derse's rebuff by soliciting at least nine Derse employees to work for 3D since at least June 2007.

24.     3D's solicitation method includes targeting Derse salespeople with salaries or signing bonuses ranging from $250,000 to $500,000 in exchange for those salespeople joining 3D and diverting their Derse accounts to 3D.

25.     For example, sometime prior to June 7, 2007 and continuing through July 2008, Prihoda contacted Derse Executive Vice President James Elser and offered Elser a $500,000 signing bonus with additional bonus payments for successful recruitment of other sales executives, including Derse employees, with books of business.  Elser has sales contact with many Derse clients, and possesses proprietary information about those clients and Derse practices.

26.     Further, prior to June 7, 2007, Prihoda contacted Corazzari and purportedly offered a signing bonus purportedly between $250,000-$500,000 to join 3D.  As stated, Corazzari possesses substantial, proprietary information about many significant Derse clients.

27.     In or around November 2007, Prihoda solicited a Derse Director of Business Development offering him a substantial signing bonus to join 3D.

28.     The week of April 14-29, 2008, Derse's then Corporate Design Director Jon Horn vacationed in Europe with his spouse and visited two of Derse's largest clients, Genentech and Subzero, respectively.  Derse paid a portion of Horn's travel expenses as Horn worked as the

lead designer for these Derse accounts. Corazzari and Horn worked closely together while at Derse.

29.     On June 2, 2008, Corazzari's account manager at Derse, Ellen Keith resigned from Derse giving 4 days notice. Keith worked for Derse for approximately 10 years and worked closely with Corazzari. Keith indicated to Derse representatives at the time she left that she did not know what she would do next and was taking the summer off. On information and belief, Keith is now working with 3D.

30.     The next day, on June 3, 2008, then Corporate Design Director Jon Horn notified Derse that he was resigning and his last day would be June 17, 2008. Horn informed Derse representatives he was not going to work for a competitor, but was starting his own business. However, he then also indicated that he would not perform work for Derse and in an email to Genentech (a Derse client) he stated that he was leaving Derse amicably.

31.     On June 13, 2008, Richard Frank notified Derse that he was resigning and his last day would be June 27, 2008. Frank informed Derse representatives that he intended to be a free lance detailer. Derse subsequently learned that Frank is now working for 3D.

32.     On June 20, 2008, Prihoda contacted a Derse Vice President, Michael Bradley, and offered him a $300,000 salary to work at 3D.

33.     On July 10, 2008, Corazzari resigned from Derse.

34.     On or about July 14, 2008, Derse learned that Horn is now working for 3D.

35.     On or about July 28, 2008, Derse learned for the first time, that Corazzari works at 3D.

36.     Over recent months, as noted above, Derse employees have left Derse to work for 3D. In a conversation with 3D's executive vice president in or about December 2007, Haney

- 8 -

told Prihoda that Derse was concerned that 3D was improperly raiding Derse's employees and accounts. In response, Prihoda told Haney that raiding Derse's and other competitors' employees and accounts was a part of 3D's business plan.

### FIRST CAUSE OF ACTION
**(Breach of Fiduciary and Common Law Duties)**

37. Derse realleges and incorporates Paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38. Corazzari was a Director of Business Development for Derse and, as a result, has certain statutory and common law fiduciary obligations to Derse, including a duty of loyalty and the duty to refrain from usurping Derse's business opportunities.

39. Corazzari's wrongful acts, misrepresentations, misappropriations, interferences and destructions described herein are breaches of Corazzari's fiduciary duty to Derse.

40. As an employee of Derse, Corazzari owed certain common law duties to Derse, including but not limited to the duties of good faith and fair dealing, the duty of loyalty and the duty to refrain from undertaking or participating in activities damaging to or competitive with Derse.

41. While employed by Derse, Corazzari breached his duties to Derse by, among other things, destroying Derse's computer programs and files on his Laptop, procuring the means to compete with Derse through the appropriation of Derse's confidential information without full disclosure of same and/or the nature and purpose of his activities to Derse, improperly entering into secret dealings with others in order to benefit himself and/or his outside business opportunities, misappropriating Derse's confidential information and trade secrets and undertaking the other wrongful acts described herein.

- 9 -

42. Corazzari's conduct in facilitating and/or coordinating resignations by Derse employees with the intent to damage Derse violates Corazzari's fiduciary duties to Derse. While Corazzari was free to terminate his employment with Derse, he is not entitled to divulge confidential information to competitors or potential competitors, or otherwise act to intentionally damage or injure Derse, its property, and/or its business relationships.

43. Corazzari violated his fiduciary duties arising from his relationship with Derse in that, while employed by Derse, he secretly planned and recruited others to leave the employ of Derse and schemed to deprive Derse of its clients, records and trade secrets.

44. While employed by Derse, Corazzari unlawfully negotiated and conspired to divert Derse's business and confidential information and trade secrets, and utilized Derse's time and resources to accomplish his goals and objectives.

45. In committing the foregoing acts, Corazzari acted willfully and wantonly, and with an utter indifference to Derse' rights.

46. As a direct and proximate result, Derse has suffered damage and loss.

### SECOND CAUSE OF ACTION:
#### (Conversion)

47. Plaintiff realleges and incorporates Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. By using Derse's computer system for wrongful and selfish purposes, Corazzari has taken certain property from Derse without the consent of Derse.

49. By so doing, Corazzari wrongfully asserted dominion over Derse's computer information, inconsistent with Derse rights therein, and has deprived Derse of it.

50.    By taking Derse's customer and business information and not returning such information and documents, Corazzari wrongfully has converted Derse's property and trade secrets.

51.    In addition, by deleting Derse's computer information, Corazzari wrongfully has converted Derse's property and otherwise caused damage to Derse.

52.    As a direct and proximate result, Derse has suffered damage and loss.

## THIRD CAUSE OF ACTION
### (Destruction of Property)

53.    Plaintiff realleges and incorporates Paragraphs 1 through 52 of the Complaint as if fully set forth herein.

54.    At or about the time Corazzari left the employment of Derse, Corazzari without authorization willfully and knowingly discarded and/or destroyed Derse's corporate documents and computer records, including without limitation, on information and belief, documents relating to unauthorized transactions, usurpation of corporate opportunities and misappropriations by Corazzari.

55.    Corazzari intentionally took and controlled, among other things, documents, data, electronic files and information contained on Derse's computer and rightfully belonging to Derse, for an unauthorized purpose and without Derse's consent.

56.    Corazzari took and controlled the documents, data, electronic files, information, and supporting documentation contained on Derse's computer network and rightfully belonging to Derse, without Derse's consent and without lawful authority.

57.    Corazzari's acts with respect to the documents, data, electronic files and information on Derse's computer network and rightfully belonging to Derse, interfered with the Derse's right to possess such property.

- 11 -

58.    As a direct and proximate result, Derse has suffered damages and loss.  Pursuant to Wis. Stat. §§ 943.20 and 895.80, Derse is entitled to treble damages and its actual costs of litigation.

### FOURTH CAUSE OF ACTION
#### (Interference with Corporate Opportunities)

59.    Plaintiff realleges and incorporates Paragraphs 1 through 58 of the Complaint as if fully set forth herein.

60.    As discussed herein, Corazzari has interfered with the corporate business opportunities of Derse.

61.    As a direct and proximate result, Derse has suffered damage and loss.

### FIFTH CAUSE OF ACTION
#### (Claim for Relief Under Wis. Stat. § 895.446 - - Civil Theft)

62.    Plaintiff realleges and incorporates Paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.    Corazzari intentionally took, transferred and used property belonging to Derse without Derse's consent, including Derse's proprietary and confidential information, with the intent to deprive Derse of the possession of such property, in violation of Wis. Stat § 943.20.

64.    As a direct and proximate result, Derse has suffered damage and loss.  Pursuant to Wis. Stat. § 895.446, Derse is entitled to actual damages, including all costs of investigation and litigation, which may be trebled pursuant to Wis. Stat. § 895.446(3)(c).

### SIXTH CAUSE OF ACTION
#### (Claim for Relief Under Wis. Stat. § 943.70 - - Unauthorized Computer Access)

65.    Plaintiff realleges and incorporates Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66.     Corazzari willfully, knowingly and without authorization copied or took possession of electronic data and information belonging to Derse from Derse's computer system, without Derse's consent and without lawful authority.

67.     Corazzari's conduct interfered with the right of Derse to possess such property and directly and proximately caused injury to Derse.

68.     As a direct and proximate result, Derse has suffered damage and loss. Corazzari's acts constitute a violation of Wis. Stat. §943.70 and entitle Derse to compensatory damages and injunctive relief.

### SEVENTH CAUSE OF ACTION
### (Trade Secret Theft Under Wis. Stat. § 134.90)

69.     Plaintiff realleges and incorporates Paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     Derse does business with customers across the United States.

71.     The keys to Derse's success include several types of confidential information, including: (1) confidential processes it has developed over the years; (2) current and potential client and customer information, other than the clients' names and addresses, confidential customer information; (3) proprietary sales, marketing, financial and process implementation information; and (4) confidential information regarding its employees, including those employees' personal information.

72.     The books and records of Derse, the confidential information contained therein, and the Derse customer account information, including buying history and preferences, are trade secrets of Derse subject to protection under the Wisconsin Trade Secrets Act.

73.     Derse's customer information includes a compilation of information, including a listing of names, addresses and telephone numbers, buying history, preferences and needs,

- 13 -

bidding and project information of Derse clients, as well as Derse financial and historical information, all of which is used in Derse's business and give Derse an opportunity to and competitive advantage over other competitors who do not know the contents of this information. The detailed customer information and history compiled by Derse is valuable to Derse because it is not public knowledge and is not easily and/or legally obtained or duplicated by a competitor.

74.     Corazzari's conduct constitutes a misappropriation and misuse of Derse's confidential, trade secret information in violation of the Wisconsin Trade Secrets Act, because Corazzari has unlawfully used and/or disclosed Derse customer information without Derse's consent despite the fact that Corazzari acquired knowledge of this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Corazzari expressly owed to Derse as an agent, employee and representative of Derse.

75.     Derse took affirmative steps to maintain the confidentiality of all such information, which were reasonable under the circumstances, including limiting access to its network and electronic files to only users with valid login ids and passwords.

76.     Corazzari, has improperly gained access to and used Derse's trade secrets and proprietary know-how contained within the confidential files and private and confidential computer files of Derse, all to Derse's detriment.

77.     Consequently, as a proximate result of Corazzari's actions, Corazzari, and possibly others, have reaped the benefits due solely to Derse, and have thereby been unjustly enriched.

78.     Derse has and is being damaged by Corazzari's theft of its trade secrets. The damage to Derse includes, but is not limited to, lost customers, potential lost business opportunities, loss of employees, and a disadvantaged market position in the competitive exhibit

- 14 -

marketing industry. Derse will suffer additional irreparable damage unless Corazzari is enjoined by this Court from continued theft and use of Derse's trade secrets and reaping the benefits thereof.

### EIGHTH CAUSE OF ACTION
#### (Unfair Trade Practices)

79.  Plaintiff realleges and incorporates Paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.  Corazzari's acts, as alleged heretofore, constitute unfair trade practices in business under Wis. Stat. § 100.20(1t).

81.  As a direct and proximate result, Derse has suffered damage and loss.

### NINTH CAUSE OF ACTION
#### (Tortious Interference with Business Relations and Advantage)

82.  Plaintiff realleges and incorporates Paragraphs 1 through 81 of the Complaint as if fully set forth herein.

83.  Corazzari has knowledge of Derse's present and prospective contractual and business relationships, contacts and good will with its present and prospective customers.

84.  Derse gained profits from these customer relationships and had the reasonable prospect of gaining future economic advantage from these relationships.

85.  Corazzari had knowledge of Derse's present and prospective economic relationships and the economic advantages to Derse resulting therefrom.

86.  Corazzari has contacted clients of Derse and attempted to persuade them to cease doing business with Derse and instead enter into business with its competitor 3D.

87.  By his above-described wrongful conduct, Corazzari without privilege has interfered with and induced Derse's customers to stop doing business with Derse, and has interfered with Derse's prospective economic relationships.

88.     Corazzari intentionally, knowingly and for unworthy or selfish purposes has directly and/or indirectly contacted and solicited business from Derse's customers and, upon information and belief, wrongfully has attempted to induce them to alter or terminate their present and prospective relationships with Derse, thereby interfering with Derse's present and prospective contractual and business relationships.

89.     As a direct and proximate result, Derse has suffered damage and loss.

## TENTH CAUSE OF ACTION
### (Replevin)

90.     Plaintiff realleges and incorporates Paragraphs 1 through 89 of the Complaint as if fully set forth herein.

91.     Derse is entitled to possession of its documents, data, electronic files and information unlawfully taken from its computer network by Corazzari and held by Corazzari, without Derse's consent and without lawful authority.

92.     The documents, data, electronic files and information unlawfully taken from Derse's computer network by Corazzari and held by Corazzari, are wrongfully being detained by Corazzari, among other places, on certain computer(s) in Corazzari's possession, custody, or control and for the purpose of private gain and to cause harm to Derse.

93.     The documents, data, electronic files and information unlawfully taken from Derse's computer network by Corazzari and held by Corazzari, have not been taken for a tax assessment or fine or seized under execution or attachment against the property of Derse.

94.     The documents, data, electronic files and information unlawfully taken from Derse's computer network by Corazzari and held by Corazzari, have a value that is difficult to calculate, but in any event over $5,000.  Derse is entitled to the return of its property.

## ELEVENTH CAUSE OF ACTION

- 16 -

**(Declaratory Judgment and Injunctive Relief)**

95.    As a separate and distinct claim, Plaintiff realleges and incorporates Paragraphs 1 through 94 of the Complaint as if fully set forth herein.

96.    Upon information and belief, Corazzari continues to wrongfully use Derse's confidential information and continues to act to adversely affect the business of Derse and, unless Corazzari is enjoined by this Court from doing so, Derse is threatened with the real possibility that Corazzari will continue to do so.

97.    Corazzari's acts are designed, and will and have caused irreparable harm to Derse, including destruction of customer relations and goodwill that were developed through years of work and investment.

98.    Unless enjoined, the injury caused by Corazzari to Derse will be irreparable and it has no adequate remedy at law.

99.    By virtue of the foregoing, Derse have demonstrated a probability of success on the merits of its claims and that a balancing of the equities favors the issuance of an injunction.

100.    Unless Corazzari is enjoined from the foregoing conduct, Derse will be irreparably harmed, *inter alia*, by:

a.    Disclosure of trade secrets and other confidential information that is solely the property of Derse;

b.    Loss of confidentiality of business records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c.    Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

- 17 -

        d.     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

      101.   Derse has no adequate remedy at law to remedy these harms, absent an injunction.

      102.   An actual case in controversy therefore exists between the parties pursuant to Wis. Stat. §806.04 and Derse is entitled to a Declaratory Judgment in its favor declaring the rights and duties of the parties pursuant to applicable law.  Corazzari has caused and will continue to cause serious and irreparable damage to Derse for which Derse is without adequate remedy at law.  As a result, Derse is entitled to the injunctive relief requested herein.

      **WHEREFORE,** Plaintiff requests Judgment on its Complaint as follows:

1.     **On its First Cause of Action:**

      a.     An award of compensatory damages from Corazzari to be ascertained at trial;

      b.     An award of punitive damages to be determined at trial;

      c.     An award of the statutory fees and costs incurred by Derse in this action; and

      d.     An award of any and all additional relief that the Court finds just and equitable.

2.     **On its Second Cause of Action:**

      a.     An award of compensatory damages from Corazzari to be ascertained at trial;

      b.     An award of punitive damages to be determined at trial;

      c.     An award of the statutory fees and costs incurred by Derse in this action; and

        d.     An award of any and all additional relief that the Court finds just and equitable.

3.      **On its Third Cause of Action:**

        a.     An award of compensatory damages from Corazzari to be ascertained at trial;

        b.     An award of punitive damages to be determined at trial;

        c.     An award of treble damages and actual litigation costs incurred by Derse pursuant to Wis. Stat. §§ 943.20 and 895.80; and

        d.     An award of any and all additional relief that the Court finds just and equitable.

4.      **On its Fourth Cause of Action:**

        a.     An award of compensatory damages from Corazzari to be ascertained at trial;

        b.     An award of punitive damages to be determined at trial;

        c.     An award of the statutory fees and costs incurred by Derse in this action; and

        d.     An award of any and all additional relief that the Court finds just and equitable.

5.      **On its Fifth Cause of Action:**

        a.     An award of compensatory damages from Corazzari to be ascertained at trial;

        b.     An award of treble damages and all costs of investigation and litigation incurred by Derse pursuant to Wis. Stat. § 895.446(3)(6); and

    c.     An award of any and all additional relief that the Court finds just and equitable.

6.     **On its Sixth Cause of Action:**

    a.     An award of compensatory damages from Corazzari to be ascertained at trial;

    b.     An award of the statutory fees and costs incurred by Derse in this action; and

    c.     An award of any and all additional relief that the Court finds just and equitable, including appropriate injunctive relief pursuant to Wis. Stat. § 943.70.

7.     **On its Seventh Cause of Action:**

    a.     An award of compensatory damages from Corazzari to be ascertained at trial;

    b.     An award of the statutory fees and costs incurred by Derse in this action; and

    c.     An award of any and all additional relief that the Court finds just and equitable, including appropriate injunctive relief.

8.     **On its Eighth Cause of Action:**

    a.     An award of compensatory damages from Corazzari to be ascertained at trial;

    b.     An award of the statutory fees and costs incurred by Derse in this action; and

    c.     An award of any and all additional relief that the Court finds just and equitable.

9.    **On its Ninth Cause of Action:**

  a. An award of compensatory damages from Corazzari to be ascertained at trial.

  b. An award of punitive damages to be determined at trial;

  c. An award of the statutory fees and costs incurred by Derse in this action; and

  d. An award of any and all additional relief that the Court finds just and equitable.

10.    **On its Tenth Cause of Action:**

  a. An award of all relief from Corazzari that the Court finds just and equitable, including appropriate injunctive relief; and

  b. An award of the statutory fees and costs incurred by Derse in this action.

  c. An award of any and all additional relief that the Court finds just and equitable, including appropriate injunctive relief.

11.    **On its Eleventh Cause of Action:**

  a. That the Court declares the various rights and duties of the parties to the Agreement, including the following:

   i. That Corazzari is bound to hold and is obligated to hold in strict confidence all Derse confidential information, including but not limited to all customer contact information, and all Derse information on pricing, profit margins, costs, client projects files, and bid information, as well as all other Derse marketing and financial information;

   ii. That Corazzari is enjoined from competing with Derse using Derse's confidential information; and

- 21 -

      iii.     That Corazzaris return to Derse all of the property rightfully belonging to Derse that is in Corazzari's possession or under his control.

      iv.     That Corazzari is enjoined from the continued possession, use or disclosure of Derse's confidential information and trade secrets;

      v.     That Corazzari is enjoined from interfering with Derse's business and contractual relations with its customers;

      vi.     That Corazzari return all documents, materials, computer folders and files, and other data or information stored in any form whatsoever that he obtained from Derse or by virtue of his employment at Derse.

      vii.     That Corazzari make available to Derse or its representatives every computer hard-drive or other electronic storage device in Corazzari's custody or control for Derse's inspection and examination; and

      b.     That the Court further declare the rights and duties of the parties as it deems appropriate;

      c.     An award of the fees and costs incurred by Derse in this action; and

      d.     An award of any and all additional relief that Court deems just and equitable.

- 22 -

Dated this 20th day of August, 2008.

**MICHAEL BEST & FRIEDRICH LLP**
Attorneys for Plaintiff Derse, Inc.

By: _____
    John C. Thomure, SBN 1021429

Grant C. Killoran, SBN 1015503
Eric H. Rumbaugh, SBN 1015164
Michael Best & Friedrich LLP
100 East Wisconsin Avenue
Suite 3300
Milwaukee, Wisconsin  53202-4108
Phone  414.271.6560
Fax  414.277.0656

James R. Troupis, SBN 1005341
Michael Best & Friedrich LLP
Firstar Plaza
One South Pinckney Street
Madison, Wisconsin  53703
Phone  608.257.3501
Fax  608.283.2275

T:\CLIENTA\025008\0099\B1521538.4

- 23 -

# N e l s o n  H.  C o r a z z a r i

Thursday, July 10th, 2008

Mr. Vito Bonventre
General Manager, Milwaukee
Derse Exhibits, Inc.
1234 North 62nd Street
Milwaukee, WI 53051

RE: Resignation

Vito,

I would like to inform you that I am resigning from my position as Director, Business Development / Account Executive for Derse effective immediately.

This was not an easy decision to make on my part. The past 10 years with Derse have been very rewarding, and I am proud of my contributions to the company. I've enjoyed working for Derse and appreciate the opportunities for professional and personal growth that have been provided to me.

I am providing you with the following Derse-related materials that have been in my use and are being left or returned.  My goal is to facilitate a successful transition of all ongoing projects.  If you feel something is missing from this list, please let me know, and I will do my best to assist with the request.

- Laptop computer – all ongoing projects are on the desktop in the folder labeled "Current Projects".

  o  Due to the malfunction and consequent deletion of all of my data on the external hard drive that was provided to me by Corporate IT, I began to keep all computer files in this location.  Likewise, I have removed all personal (non Derse provided) programs such as iTunes, photos, personal wireless router card, HP photo & printing software and AOL Messenger from this laptop.

- Customer contact list

  o  As you are also aware, my GroupWise email account, and subsequent contact lists in the Address Book, were also deleted by Corporate IT in a separate event from the one mentioned above.

  o  Please note that when I received my new laptop (at the beginning of 2008) the ACT Database was never set up.  The previously existing ACT database should still be on file with Marketing.

- 1GB Thumb drive.

- Keys to the Milwaukee Exhibit facility.

- Any and all documents, brochures and printed materials related to Derse or clients.

---

W157 N7415 Stonewood Circle • Menomonee Falls, WI 53051
[1]



EXHIBIT
A

# Nelson H. Corazzari

Regarding my outstanding compensation and commissions please provide the following:

- An itemized accounting of all commissions owed to date and their subsequent payment sent to my home address noted below.
- An itemized accounting and schedule of all commission payments to be made by Derse after my date of resignation that are calculated on any sales by me prior to July 10th, 2008. Subsequent compensation should be sent to my home address noted below.
- Balance of health insurance re-imbursement that was submitted to Sheri Thomka on 7/2/08 and 7/9/08 per her email discussions with Amy Corazzari.

Concerning my 401(k) and vested *Profit Sharing* funds, please prepare all needed documentation so that these funds can be rolled into a qualified plan of my choosing.

On the subject of my employment file, please send a full copy of the contents to my home address as well.

Thank you for your prompt cooperation to these matters and I sincerely wish you and Derse all of the best in the future.

Best regards,

*N. Corazza*

Nelson Corazzari

Cc:/
Ms. Sheri Thomka – Human Resources

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derse, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 08 CV 4722 |
| | ) | |
| 3D Exhibits, Inc. | ) | Judge James F. Holderman |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DENY OR STAY PLAINTIFF'S MOTION FOR PRESERVATION OF EVIDENCE, OR IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY

# EXHIBITS C-I

STATE OF WISCONSIN   :   CIRCUIT COURT   :   WAUKESHA COUNTY

DERSE, INC.,
1234 North 62nd Street
Milwaukee, WI 53213,

        Plaintiff,

     v.                       Case No. 08-CV-2909

NELSON CORAZZARI,            Case Codes: 30303, 30106, 30701,
W157 N7415 Stonewood Circle      30704
Menomonee Falls, WI 53051,

        Defendant.

---

### PLAINTIFF'S MOTION FOR PRESERVATION OF EVIDENCE, EXPEDITED DISCOVERY, TO SHORTEN TIME FOR THE PRODUCTION OF DOCUMENTS AND ENTRY UPON LAND TO INSPECT, TEST AND COPY TANGIBLE AND INTANGIBLE THINGS

To:   The above-named Defendant:

NOW COMES Plaintiff Derse, Inc. ("Derse"), by and through its attorneys, Michael Best & Friedrich LLP, and moves the Court for an Order pursuant to Wis. Stat. § 804.09, in the form filed herewith, commanding Defendant Nelson Corazzari ("Corazzari") to produce to Derse or its representatives at the offices of Michael Best & Friedrich LLP located in Waukesha, Wisconsin, at a time that is mutually agreed upon by the parties but no later than twenty-four (24) hours from the time such Order is served upon Corazzari, any computers, computer hard-drives, all electronic storage devices of any kind and digital cameras in Corazzari's possession, custody and control (the "Property") for Derse's inspection, examination and copying and further commanding that Corazzari not destroy, transfer, copy, move or convey any computer files, computer programs, documents, computers, computer disks, compact disks, DVD's, PDA's, external hard drives such as "thumb drives," "Buffalo drives," zip drives, or any other records no

EXHIBIT
C

matter how stored, containing any property or information belonging to Derse or relating to Derse's business, or may be relevant or lead to relevant evidence concerning the dispute between Derse and Corazzari.

1.     As alternative relief, Derse moves the Court for an Order pursuant to Wis. Stat. § 804.09, in the form filed herewith, shortening to twenty-four (24) hours the amount of notice Derse must give Corazzari before Derse's attorneys or representatives and experts may enter the premises of Corazzari located at the address listed above to inspect, test and copy the Property at said premises.

2.     Derse further moves the Court to shorten the amount of notice Derse must otherwise give to Corazzari for the Property described herein and to conduct an expedited deposition of Corazzari.

3.     Derse respectfully requests that all of the aforementioned orders and actions be permitted by notice upon execution of the Order.

In support of this Motion, Derse states as follows:

4.     On August 20, 2008, Derse filed this action against Corazzari, alleging Breach of Fiduciary and Common Law Duties, Conversion, Destruction of Property, Interference with Corporate Opportunities, Claim for Relief Under Wis. Stat. § 895.446 - - Civil Theft, Claim for Relief Under Wis. Stat. § 943.70 - - Unauthorized Computer Access, Trade Secret Theft Under Wis. Stat. § 134.90, Unfair Trade Practices, Tortious Interference with Business Relations and Advantage, Replevin, and Declaratory Judgment and Injunctive Relief.[1]

---

[1] On August 20, 2008, Derse also filed a Complaint against 3D, Corazzari's new employer, in Federal District Court in Illinois alleging tortious interference with prospective business advantage, inducement of breach of fiduciary duty and common law duties, misappropriation of trade secrets and civil conspiracy to commit tortious interference.

5.     Corazzari was a highly compensated senior level executive of Derse who had access to its confidential information, trade secrets, and commercially valuable information including Derse's pricing, profit margin, cost, client, project files and bid information.

6.     On numerous occasions before his abrupt resignation from Derse on July 10, 2008, Corazzari accessed numerous computer files containing Derse's confidential information, trade secrets and commercially valuable information.  (See Affidavit of Donald Weston attached hereto and incorporated herein).

7.     From July 8, 2008 to July 10, 2008, Corazzari deleted computer programs and files from his Derse laptop, and attached several external electronic storage devises to his Derse laptop. (See Affidavit of Steven Haenchen attached hereto and incorporated herein).  His laptop contained Derse's confidential information, trade secrets and commercially valuable information.

8.     On or about July 28, 2008, Derse learned for the first time that Corazzari works at 3D.

9.     Upon learning of Corazzari's resignation and that he had joined a competitor, 3D, despite his prior representations to the contrary, Derse conducted computer forensic examinations of Corazzari's computers.  Consequently, the conduct described herein was not discovered until recently.

10.    As alleged in the Complaint in this case, prior to and subsequent to his resignation from Derse and the commencement of his employment with 3D, Corazzari and other employees unlawfully conspired with 3D to misappropriate Derse's confidential information and trade secrets, raid Derse's employees and obtain Derse's clients and business opportunities.  Indeed, 3D admitted to Derse that raiding Derse's employees and accounts was part of 3D's business plan.

11.     Given Corazzari's unlawful conduct while still employed with Derse, it is likely that he may take further action to delete computer data to conceal unlawful conduct.

12.     As a result of Corazzari's unlawful conduct, Derse seeks an order requiring Corazzari to preserve the Property including all electronically stored information and documents related to the conduct alleged in this Complaint, and permitting Derse to conduct expedited discovery, such as enabling its attorneys and computer forensic experts to inspect, examine and copy the Property.

13.     The relief sought herein is requested to obtain evidence of Corazzari's use, destruction, copying, conversion, and misappropriation of Derse's computer programs, files and data containing confidential business information, trade secrets, and commercially valuable information.  Such information is easily moveable, altered and destroyed and, accordingly, Derse must inspect and analyze the information sought herein immediately in order to preserve evidence in this action and to ensure Corazzari has notice of his duty to preserve such evidence and information.

WHEREFORE, Derse requests that this Court enter an Order commanding Corazzari to produce and preserve all electronically stored information and documents within his custody and control related to the conduct alleged in the Complaint; commanding Corazzari to preserve and not destroy, alter, copy or transfer such electronically stored information and documents described herein, or, in the alternative, allowing Derse to enter on to Corazzari's premises to inspect, test and copy Corazzari's computers, external hard drives, digital cameras, documents and things, and, granting Derse such other relief deemed appropriate.

Dated this _20th_ day of August, 2008.

MICHAEL BEST & FRIEDRICH LLP
Attorney for Plaintiff Derse, Inc.

By: _____
John C. Thomure, Jr., SBN 1021429

Grant C. Killoran, SBN 1015503
Eric H. Rumbaugh, SBN 1015164
Michael Best & Friedrich LLP
100 East Wisconsin Avenue
Suite 3300
Milwaukee, Wisconsin  53202-4108
Phone  414.271.6560
Fax  414.277.0656

James R. Troupis, SBN 1005341
Michael Best & Friedrich LLP
One South Pinckney St.
P.O. Box 1806
Madison, Wisconsin 53701
Phone 608.257.3501
Fax 608.283.2275

T:\CLIENT\025008\0099\A2786568.5

- 5 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERSE, INC.,                          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )    No. 08CV 4722
                                      )
3D EXHIBITS, INC.,                    )    Judge Holderman
                                      )
        Defendant.                    )    Magistrate Judge Mason

### AFFIDAVIT OF EUGENE FAUT

After first being duly sworn on oath, the undersigned states:

1.      My name is Eugene Faut. I am over the age of eighteen years and under no legal disability; if sworn as a witness I can testify competently to the facts set forth herein.

2.      I have personal knowledge of the facts contained herein.

3.      I am the President of 3D Exhibits, Inc. 3D creates, designs, builds and installs trade show exhibits.

4.      Although our corporate office is located in Illinois, 3D does business nationwide and leases office and warehouse space in a number of states. The warehouses are for storing, building and refurbishing exhibits. 3D has an office and a warehouse in Milwaukee, Wisconsin.

5.      To the best of my knowledge, Nelson Corazzari has not disclosed any of Derse's alleged confidential or proprietary information to 3D, or used any such information in his work for 3D. Additionally, 3D advises new employees (including

1



Nelson Corazzari) not to disclose to 3D, or use any confidential information from a prior employer, in their work for 3D.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gene Faut

F:\LIT\3D\EXHIBIT\Derse III\AFFIDAVITS\FAUT.doc

2

## VERIFICATION

I, Gene Faut, verify under penalty of perjury that the foregoing is true and correct.

Executed on: _____8/ 29 /08_____ .

Gene Faut

J:\LIT\3\EXHIBR\Dene II\AFFIDAVITS\FAUT.doc

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERSE, INC.,                                     )
                                                 )
        Plaintiff,                               )
v.                                               )        No. 08CV 4722
                                                 )
3D EXHIBITS, INC.,                               )        Judge Holderman
                                                 )
        Defendant.                               )        Magistrate Judge Mason

### AFFIDAVIT OF NELSON CORAZZARI

After being first duly sworn on oath, the undersigned states:

1.      My name is Nelson Corazzari; I am over the age of eighteen years and under no legal disability; if sworn as a witness I can testify competently to the facts set forth herein.

2.      I have personal knowledge of the facts contained herein.

3.      I have been employed in the exhibit and trade show industry since approximately 1995.

4.      On or about October 1, 1999, I was hired by Derse as a salesman.

5.      Prior to my employment with Derse, I worked for 1 year with The Stewart Companies whose assets were purchased by Derse in October, 1999 and 2 years for Chicago Exhibit Production as an account manager and 1 years at GES, both companies in the exhibit and trade show industry.

6.      I initially performed my duties for Derse from its Chicago office until approximately 2002, when I was transferred to Derse's Milwaukee, Wisconsin office.

1


EXHIBIT
E

7.     In approximately 2000, I was promoted to the position of Group Sales Manager from Account Executive at Derse.

8.     While employed at Derse, my duties included developing new business and maintaining customer accounts.

9.     Most of Derse's customers did not use Derse exclusively for their exhibit and trade show projects, but instead divided their exhibit and trade show projects among Derse and Derse's competitors.

10.     During my employment at Derse, all customer information was stored on shared computer drives that could be accessed by any employee of Derse.  Additionally, paper copies of the customer information was kept in an open room at Derse and were available to all of Derse's employees.

11.     At approximately the end of April 1, 2008, Derse had three of its computers stolen form its Milwaukee offices.

12.     After Derse's computers were stolen in approximately April 2008, Derse for the first time during my employment locked the doors to its Milwaukee office and required employees to use keys to gain access to the building.

13.     During my employment with Derse until approximately the end of April 2008, the doors to Derse's offices in Milwaukee were unlocked and   employees were free to come and go as they wanted.

14.     Over the last approximately 5 to 6 years, larger customers in the exhibit and trade show industry have started to place their exhibit and trade show business for bid rather than based upon relationships with a salesperson.

2

15.    While I sought to obtain requests for proposal from exhibit and trade show customers for Derse, once Derse obtained such request, management at Derse prepared the bids that were submitted to the customer. I did not have a decision making role in determining how Derse would bid in response to requests for proposal and did not determine the prices quoted by Derse for such bids.

16.    Beginning in approximately 2005, I became frustrated with and developed concerns with the manner in which Derse management was conducting its business.

17.    Beginning in approximately 2005, and escalating until the time I resigned my employment with Derse on July 10, 2008, Derse began experiencing repeated and unusual service failures, including delays in performing projects for customers. In addition, I began receiving customer complaints about the declining design, construction, and delivery services provided by Derse.

18.    Beginning in approximately 2005, Derse also implemented new management philosophies with which I disagreed. Beginning in approximately 2005, Derse was less interested in providing bids on requests for proposals ("RFP") for smaller projects which I believed could lead to larger projects for that customer. Moreover, Derse began pricing their exhibits and services based upon Derse's desired margins rather than competitively pricing such services.

19.    In the Spring 2008, while I was employed by Derse, Derse received a request for proposal from Nuance to bid Nuance's exhibit program.

20.    Jim Elser ("Jim"), the Executive Vice-President for Derse, and Vito Bonventre ("Vito"), the General Manager for Derse, prepared the bid for Nuance, including without limitation, making all pricing determinations.

21.    Prior to submitting Derse's bid to Nuance, I asked Jim and Vito several times if they were confident that the bid they prepared to Nuance was competitive. Some of the

3

rates offered to Nuance were the same rates that Nuance had previously negotiated with Derse. Jim and Vito advised me that they were satisfied with the bid they prepared.

22.    Other than inquiring whether Jim and Vito were satisfied with the bid they prepared to submit to Nuance, I was not involved in developing Derse's bid for Nuance, nor did I ever suggest that the quote be raised.

23.    Vito showed me a pricing chart that he said was inadvertently provided to him which included a pricing matrix, including mark up, labor rates, and graphic costs for Derse's competitors for another project.

24.    Vito advised me that he and Jim had used the pricing chart that they had obtained inappropriately to prepare Nuance's bid and ensure that Derse charged rates that were competitive.

25.    In approximately April of 2008 there was an opportunity to bid on a user group for Nuance that was sent to my attention. I followed standard protocol in entering the opportunity into the system. Vito felt that Derse did not have a good chance of winning this business, that the user group was better suited for a general contractor such as GES or Freeman. Derse decided to decline the bid opportunity. In the discussion with Nuance after receiving word that Derse had lost the bid for the exhibit and program, it was mentioned to Nelson by Nuance purchasing that the marketing group that handled the user group was slightly miffed that Derse declined the bid. This was not a deciding factor, but was discussed during the evaluation process.

26.    Approximately six (6) weeks before the RFP was requested by Nuance in the spring of 2008, Derse irreparably damaged its relationship with Nuance.

27.    Approximately two (2) years ago, Nuance had purchased Dictaphone. Dictaphone had an office located in Melbourne, Florida, and another office in Stratford, Connecticut, where Dictaphone stored its tradeshow technical equipment and also where

4

Dictaphone "staged" this equipment. Staging was the process that Dictaphone used to prepare the computers to operate their demonstrations at the tradeshow sites. When Nuance purchased Dictaphone, Dictaphone was forced to vacate these two staging rooms. I developed a solution for Dictaphone wherein Derse would provide Dictaphone a large staging room and at the same time save Dictaphone considerable transportation costs since Dictaphone could consolidate their technical equipment into Derse's offices in Milwaukee. Derse only charged Dictaphone approximately $300.00 per month for the added storage. Dictaphone loved the arrangement and was really excited about having a new staging room and saving money. Dictaphone viewed Derse as a partner who looked out for Dictaphone and Nuance's interests.

28.     However, when Derse decided to move into its new offices in 2008, the executives at Derse, including Bill Haney, told me that Nuance would not have a staging room at the new facility for Dictaphone. I advised Derse, including Mr. Haney and Vito Bonventre, the new general manager, that this would not sit well with Dictaphone and Nuance and that we would need to come up with a solution. It was decided that Derse would allow a staging room to be constructed in Derse's warehouse area by the stacking racks.

29.     Approximately two (2) weeks later, Bill Haney instructed me to present Nuance with the fact that this new staging room would cost Nuance $16,000.00 and that the monthly storage rate would be increased from $300.00 to $800.00 per month. I was shocked and told Mr. Haney that I could not bring this to Nuance and that it was not in the best interest of Derse's relationship with Nuance and Dictaphone to make such a proposal. Nevertheless, Mr. Haney instructed me to present this proposal to Dictaphone and Nuance as either a yes or no option and Mr. Haney specifically instructed me to provide this proposal to the clients at the Exhibitors Show in Las Vegas. Prior to the show, I was able to convince Derse to lower the monthly storage fee from $800.00 to approximately $400.00, but Derse refused to reduce or eliminate the $16,000.00 charge to Nuance and Dictaphone for the construction of the staging room.

30.     Pursuant to Derse's direction at the Exhibitors Show in Las Vegas show in 2008, I presented Nuance and Dictaphone Derse's proposal regarding the costs of the staging room. My client's contact, Amy Souza, was furious and stated that she was embarrassed that Derse would even consider making this demand upon Dictaphone and Nuance.

31.     Later in the day at the exhibit show in Las Vegas, Ms. Souza informed me that in the years that she had known me and had attended the Exhibitors Show, she had never spoken to any of Derse's competitors. However, because of the ongoing service failures by Derse, the increase in overall pricing structures and now the letter demanding that Nuance pay $16,000.00 for the staging room, Nuance was going to look at other competitors at the exhibit show and see what else was available in the industry.

32.     During the RFP process for Nuance in the spring of 2008, Derse initially wanted to bid the staging room at $8,000.00 instead of $16,000.00 and keep the monthly rate the same, however, at the end the bid that was submitted to Nuance contained no fee for the staging room. This seemed to only further damage the relationship that Derse had with Nuance since they required me to demand payment from Nuance for the staging room weeks earlier to only withdraw that demand in the subsequent RFP.

33.     Derse failed to win the bid from Nuance in Spring 2008.

34.     Based upon my frustrations and concerns with the way in which Derse was conducting its business and the manner in which Derse handled the Nuance bid, I began actively looking for other employment in approximately July 7, 2008.

35.     On or about July 7 or 8, 2008, I contacted a head hunter, Calvin Cook, to begin searching for new employment.

36.     On July 10, 2008, I resigned my employment with Derse.

37.     On or about July 10, 2008, I advised Derse in my resignation letter that I was leaving Derse's property with Derse, and that I removed personal software programs from my computer.  A true and correct copy of my July 10, 2008 resignation letter to Derse is attached to hereto and incorporated herein as Exhibit 1, and is attached to the Wisconsin Complaint as Exhibit A.

38.     At the time I resigned on or about July 10, 2008, I specifically advised Derse in my resignation letter and orally that I removed all personal programs, including the AOL Messenger, photos, personal wireless router card, iTunes, and HP photo and printing software from my laptop, and Derse did not complain or object (See Exhibit A to the Wisconsin Cmplaint).

39.     Prior to my resignation from Derse, as I stated in my July 10, 2008 resignation letter, I removed all my personal programs from my laptop.  I removed the (a) AOL Messenger account that I used solely to communicate and instant message with friends and not customers; (b) ATT Communication Manager which is a wireless card containing no data, but which allows me to access the internet wirelessly; (c) HP Imaging Sharing program which contains no data, but merely allows me to use my printer at home; (d) Microsoft broadband connection which contains no data, but allows me to hook up my computer at home; (e) Blackberry access which I had not used for approximately 4 years and which was merely an extra program taking space on the computer; (f) Safari web browser which was not functioning; and (g) personal photos that I downloaded to my camera.  None of the above programs were the property of Derse and can be obtained by anyone generally without charge.  I do not exactly know what is the Sonic (CD/DVD writer) program.  It is a software program that may have been bundled with other personal programs that I obtained, and certainly would not contain customer or Derse data.

40.     During my employment with Derse, I set my computer at Derse to routinely (approximately every 3 days), clean the internet browsing history to delete cookies and otherwise preserve computer memory and function.  The internet browsing history were

7

deleted from my computer in the ordinary course of business. To the best of my knowledge, I did not delete any Microsoft Office files from my laptop and the Microsoft office files did not contain any data, let alone customer or Derse data.

41.     At the time I advised Derse that I was removing personal programs from my computer, I requested that Derse advise me if any information or programs were missing and that I would help them to find the information.

42.     Derse has never contacted me to advise me of any information or programs Derse was missing or to request the return of any additional information.

43.     While at Derse, I, along with the other sales staff of Derse and many other sales staff in the trade show exhibit industry, used external drive devices to copy files to work at home, for presentations at customer sites, and for use as a back-up file.

44.     While employed at Derse, I, along with the other sales staff at Derse, frequently gave the external drive devices to customers after making a presentation to the customer.

45.     Prior to my resignation, I installed all information I had on my thumb drive and other external drives onto my laptop. I did not "wipe" clean the thumb drive or external drive device returned to Derse. I have no idea how to "wipe" clean such devices.

46.     Prior to resigning my employment with Derse, in March 2008, Derse began switching to new servers.

47.     In the course of switching to the new servers, IT at Derse requested that I move my files to an external hard drive for safe keeping which I did.

48.     A few weeks after I moved my files to the external hard drive pursuant to Derse's IT department's request, the external drive had a power failure or surge causing the external drive to malfunction and erasing my files.

8

49.     After the external hard drive malfunctioned, Derse's IT department retrieved some of the files from the old servers which were transferred to the new servers.

50.     All of the files that Derse's IT Department retrieved I left at Derse upon my resignation from Derse.

51.     On or about May 8, 2008, Derse's IT department deleted my e-mail account, including without limitation, my account and e-mails on GroupWise, my calendar and my frequent contacts.  I was not able to retrieve any of the information deleted by Derse's IT Department on May 8, 2008.

52.     I did not take any action to cause the malfunction of the external hard drive or the May 8, 2008, deletion of my e-mail account.

53.     Over the course of my career in the exhibit and trade show industry, I have developed contacts in the industry, including Gene Faut and Bob Prihoda at 3D Exhibits.

54.     I have known Gene Faut and Bob Prihoda at 3D Exhibits for the last approximately 3 or 4 years.

55.     In the last three or four years, Gene Faut and Bob Prihoda have requested from time to time that I begin working for 3D Exhibits.  Each time that Gene or Bob made such request, I turned them down because I was not yet dissatisfied enough with my employment at Derse to terminate my employment with Derse.

56.     After I resigned my employment with Derse, I contacted several exhibit and trade show companies, including 3D Exhibits, to inquire about possible employment.

57.     After I resigned from Derse, I began interviewing with approximately 6 companies, including 3D Exhibits.

58.    After I resigned my employment with Derse, I received offers of employment from 3D Exhibits, MC$^2$, and Matrix.

59.    I received 3D Exhibits' offer of employment on or about July 24, 2008.

60.    On or about July 30, 2008, I began my employment with 3D Exhibits.

61.    Over the last twelve (12) months of my employment with Derse, the executives at Derse in particular Bill McNamara and Bill Haney stated on numerous occasions their personal dislike of 3D and 3D's management and employees.

62.    At the time I resigned my employment with Derse, I left the customer account information for the accounts that I worked on for Derse and Derse information, including without limitation electronic information, at Derse's office in Milwaukee.

63.    I did not remove or take, nor do I possess any documents containing Derse customer information, or other information, which I understand to be confidential information of Derse or its trade secret.

64.    Since my resignation from my employment with Derse, I have not disclosed any information that I understand to be of a confidential nature about the customers that I serviced on behalf of Derse to 3D Exhibits or any other person.  Nor do I possess any documents of Derse that I understand to be confidential or proprietary to Derse.

FURTHER AFFIANT SAYETH NAUGHT.

## VERIFICATION

I, Nelson Corazzari, verify under penalty of perjury that the foregoing is true and correct.

Executed on: ___8.22.08___

_N. Corazzari_
Nelson Corazzari

QUALITUDEXHIBIT\Dersc II\AFFIDAVITS\Corazzari Aug22.doc

11

# N e l s o n   H.   C o r a z z a r i

Thursday, July 10th, 2008

Mr. Vito Bonventre
General Manager, Milwaukee
Derse Exhibits, Inc.
1234 North 62nd Street
Milwaukee, WI 53051

RE: Resignation

Vito,

I would like to inform you that I am resigning from my position as Director, Business Development / Account Executive for Derse effective immediately.

This was not an easy decision to make on my part. The past 10 years with Derse have been very rewarding, and I am proud of my contributions to the company. I've enjoyed working for Derse and appreciate the opportunities for professional and personal growth that have been provided to me.

I am providing you with the following Derse-related materials that have been in my use and are being left or returned. My goal is to facilitate a successful transition of all ongoing projects. If you feel something is missing from this list, please let me know, and I will do my best to assist with the request.

- Laptop computer – all ongoing projects are on the desktop in the folder labeled "Current Projects".

    o Due to the malfunction and consequent deletion of all of my data on the external hard drive that was provided to me by Corporate IT, I began to keep all computer files in this location. Likewise, I have removed all personal (non Derse provided) programs such as iTunes, photos, personal wireless router card, HP photo & printing software and AOL Messenger from this laptop.

- Customer contact list

    o As you are also aware, my GroupWise email account, and subsequent contact lists in the Address Book, were also deleted by Corporate IT in a separate event from the one mentioned above.

    o Please note that when I received my new laptop (at the beginning of 2008) an ACT Database was never set up. The previously existing ACT database should still be on file with Marketing.

- 1GB Thumb drive.

- Keys to the Milwaukee Exhibit facility.

- Any and all documents, brochures and printed materials related to Derse or clients.



# Nelson H. Corazzari

Regarding my outstanding compensation and commissions please provide the following:

- An itemized accounting of all commissions owed to date and their subsequent payment sent to my home address noted below.
- An itemized accounting and schedule of all commission payments to be made by Derse after my date of resignation that are calculated on any sales by me prior to July 10th, 2008. Subsequent compensation should be sent to my home address noted below.
- Balance of health insurance re-imbursement that was submitted to Sheri Thomka on 7/2/08 and 7/9/08 per her email discussions with Amy Corazzari.

Concerning my 401(k) and vested Profit Sharing funds, please prepare all needed documentation so that these funds can be rolled into a qualified plan of my choosing.

On the subject of my employment file, please send a full copy of the contents to my home address as well.

Thank you for your prompt cooperation to these matters and I sincerely wish you and Derse all of the best in the future.

Best regards,

Nelson Corazzari

Cc:/
Ms. Sheri Thomka – Human Resources

STATE OF WISCONSIN　　　:　CIRCUIT COURT　　:　WAUKESHA COUNTY

DERSE, INC.,
1234 North 62nd Street
Milwaukee, WI 53213,　　　　　　　　　　Case No. _____

　　　　　　　Plaintiff,　　　　　　　　　　Case Codes: 30303, 30106, 30701, 30704

　　　v.

NELSON CORAZZARI,
W157 N7415 Stonewood Circle
Menomonee Falls, WI 53051,

　　　　　　　Defendant.

---

**AFFIDAVIT OF STEVEN HAENCHEN**

---

STATE OF KANSAS　　　　　)
　　　　　　　　　　　　　) ss
JOHNSON COUNTY　　　　　)

　　　Steven Haenchen, being duly sworn, says:

　　　1.　　I am an adult resident of Johnson County, Kansas. I am familiar with the matters set forth herein.

　　　2.　　I am a consultant for Jefferson Wells International ("Jefferson Wells").

　　　3.　　Jefferson Wells has been engaged by Michael Best & Friedrich LLP to review several electronic devices formerly used by former Derse employee Nelson Corazzari. I am the Jefferson Wells consultant who performed that review. These devices are: a Toshiba laptop computer including a Toshiba 120GB SATA drive; one loose 500 GB SATA drive; one Buffalo USB external drive; and one USB thumb drive.

　　　4.　　On the Toshiba laptop hard drive, although Administrator and Guest accounts resided on the drive, the only "regular" user account on the drive was "ncorrazza."



EXHIBIT

F

5.    An analysis of the program files that provide information sharing ability shows that certain programs were electronically removed on or after July 8, 2008, including:

- AIM6 (AOL Instant Messenger)
- AT&T Communication Manger
- HP (Image sharing)
- Microsoft Broadband Networking
- Research in Motion folder (Blackberry access)
- Safari (Web browser)
- Sonic (CD/DVD Writer)

6.    These programs would not have been "accidentally" removed. Someone needed to either use the software removal program or Windows Explorer removal methods.

7.    My review of the Toshiba laptop hard drive shows that Microsoft Office files and Internet history files that would have been deleted in the ordinary course of business usage were removed from the hard drive using software designed to remove traces of such deleted files.

8.    My review also shows that a user connected at least five external storage devices (thumb drives and USB drives) to the Toshiba laptop between June 3 and July 10, 2008.

9.    On July 8 and 9, 2008, a user connected a USB hard drive device to the Laptop.

10.    The USB thumb drive and Buffalo USB external drive devices I examined are blank. The thumb drive was "wiped" to remove all information and the other device (a Buffalo drive) had either never been used or had been "wiped" clean using a program designed to remove traces of the electronically stored information.

11.    At approximately 5:50 a.m. on July 10, 2008, a user connected a digital camera to the Laptop. Many digital cameras can be used to transfer electronic files from a computer in a manner similar to a thumb drive.

- 2 -

Dated this 19th day of August, 2008.

_Steven J. Haenchen_
Steven Haenchen

Subscribed and sworn to before me
this 19th day of August, 2008.

_____
Notary Public, State of Kansas
My commission: 6-4-2012

NOTARY PUBLIC — State of Kansas
MARY K. KEARNS
My Appt. Exp. 6-4-2012

T:\CLIENTA\02500\02099\A2789387.2

LAW OFFICES

### Piccione, Keeley & Associates, Ltd.

| | | |
|---|---|---|
| JOHN J. PICCIONE<br>PATRICK C. KEELEY<br>THOMAS A. JACKSON | 122C South County Farm Road<br>Wheaton, Illinois 60187-4523 | TELEPHONE: 630/653-6000<br>TELECOPIER: 630/653-8029 |
| info@pkalaw.com | | E-MAIL: |
| ALISON S. FRANKLIN<br>JASON T. SINGLETON<br>COURTNEY BOBOSKY<br>JENNIFER PICCIONE | | MARK W. TADER<br>LYNN R. CONRAD |

August 20, 2008

<u>PRIVILEGED COMMUNICATION</u>
<u>FOR SETTLEMENT PURPOSES ONLY</u>

John Thomure
Michael Best & Friedrich LLP
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
jcthomure@michaelbest.com

James Troupis
Michael Best & Friedrich LLP
1 S. Pinckney Street
Suite 700
Madison, WI 53701-1806
jrtroupis@michaelbest.com

**Re:    Derse, Inc. v. Nelson Corazzari**
**Case No. 08 CV 2909**

Dear Mr. Thomure and Mr. Troupis:

As you know, today we received your pleadings in the above-referenced matter.

My clients and I were disappointed and surprised that our conference scheduled for last week was cancelled because of a claimed mediation and then despite several emails and phone call, the next time I heard from you was the filing of the these lawsuits today.



John Thomure
James Troupis
August 20, 2008
Page 2

Nevertheless, to confirm my telephone conversation today, Bernard Bobber from Foley & Lardner LLP will be filing his appearance on behalf of Nelson Corazzari in the above-referenced matter and will also file the appropriate pleadings to admit my appearance pro hac vice.

This letter will also confirm the following:

1.     Notwithstanding Nelson's position that Derse is not entitled to an order requiring the preservation of evidence and, notwithstanding the fact that your Motion was unilaterally presented and denied by the state court judge, both Nelson and Derse will agree to take all reasonable efforts to preserve any relevant evidence in this matter.  In particular, I have instructed Nelson to preserve any information and documents on his personal computer, cell phone, thumb drive and camera.  In addition, it is my understanding that Derse will preserve all relevant evidence in this matter including all evidence regarding all allegations made in the Complaint, including without limitation, all emails, Derse's forensic review of Nelson's laptop, the bid process and proposals with respect to Nuance, the installation and dismantling work to 2nd Generation, the request for proposal for Andrew and the alleged conspiracy between 3D and Nelson to "raid" Derse's employees.

2.     Counsel for the parties agree to promptly address the issues relating to access to Nelson's and Derse's electronic devices to inspect and image certain electronic devices, and counsel for the parties will address whether or not the parties are in fact entitled to access and imaging of same and the scope and protocols relating to any such search.  These discussions will be subject to providing Nelson and his attorneys time to consult, review the relevant pleadings and consult and retain his own computer forensic expert.

3.     To the extent access to certain electronic devices to image same is allowed by either party, such inspection and imaging would be contingent on the parties agreeing to the appropriate procedure, entry of an appropriate protective order and Derse agreeing to provide Nelson on the same expedited basis all relevant documents including those regarding Derse's forensic report, the agreement with Derse's forensic expert, Derse's forensic expert's file, all documents provided to or relied upon by Derse's forensic expert, and all documents evidencing and/or relating to Nelson allegedly misappropriation of any alleged confidential information or trade secrets of Derse.

John Thomure
James Troupis
August 20, 2008
Page 3

4.    Derse will immediately withdraw its pending motions in both forums without prejudice to allow for the foregoing discussions.

5.    This correspondence and any agreement arising out of any of the discussions described herein shall be without prejudice to and without waiving the parties' respective rights to assert any and all objections, defenses and/or claims in this or any other matter, including without limitation, Derse's lawsuit filed against 3D Exhibits, Inc. in United States District Court, Northern District of Illinois Case No. 08 CV 4722.

Please advise if this is consistent with your understanding and if you have any questions, please call me.

Finally, I am out of state on a federal court matter pending in the Southern District of Florida on Tuesday, August 25, 2008, and if you cannot agree to withdraw your motion before Judge Holderman, I would ask that the motion be reset to the following week.  Please advise if this is acceptable and I will make arrangements for the rescheduling.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

*Patrick C. Keeley* / tw

Patrick C. Keeley

cc:    Bernard Bobber
       Gene Faut
       Nelson Corazzari
       TAJ:tkw082008J:\LIT\3DEXHIB\Derse Wis\L\ThomureAug20.doc

LAW OFFICES
## *Piccione, Keeley & Associates, Ltd.*

JOHN J. PICCIONE
PATRICK C. KEELEY
THOMAS A. JACKSON

122C South County Farm Road
Wheaton, Illinois 60187-4523

TELEPHONE: 630/653-8000
TELECOPIER: 630/653-8029

info@pkalaw.com

E-MAIL:

ALISON S. FRANKLIN
JASON T. SINGLETON
COURTNEY BOBOSKY
JENNIFER PICCIONE

MARK W. TADER
LYNN R. CONRAD

August 21, 2008

### PRIVILEGED COMMUNICATION FOR SETTLEMENT PURPOSES ONLY

John Thomure
Michael Best & Friedrich LLP
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
jcthomure@michaelbest.com

Daniel A. Kaufman
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue
Suite 2000
Chicago, IL 60601-6710
dakaufman@michaelbest.com

James Troupis
Michael Best & Friedrich LLP
1 S. Pinckney Street
Suite 700
Madison, WI 53701-1806
jrtroupis@michaelbest.com

Re:   Derse, Inc. v. Nelson Corazzari
      Case No. 08 CV 2909

      Derse, Inc. v. 3D Exhibits, Inc.
      Case No. 08 CV 4722

Dear Gentlemen:

To follow-up on my August 20, 2008, correspondence and our telephone conversation today, my clients (Nelson Corazzari and 3D Exhibits, Inc.) would agree to take reasonable measures to preserve relevant evidence in the above-referenced matters provided Derse likewise agrees to preserve such relevant evidence in the above-referenced matters. In addition, as I have stated, I have instructed both my clients to preserve any such evidence in these matters.



EXHIBIT
H

John Thomure
James Troupis
Daniel A. Kaufman
August 21, 2008
Page 2

As I discussed today in our telephone conversation, Nelson and 3D would also agree to have an outside IT firm retained by my clients image Nelson's personal computer, cell phone, thumb drive, camera and the 3D laptop Nelson has used for the last three (3) weeks while at 3D.    Derse's expert may observe the imaging process.  In addition, we have proposed that these images would then be provided to me and I would agree to hold the images in trust until there is an agreement between the parties or an Oder of court regarding whether or not Derse would have any access to such images.

We of course would ask that the Derse computer used by Nelson be imaged and maintained by your firm in a like manner with our expert reviewing the process.

This procedure would seem to alleviate the need of any emergency court intervention.    This would, of course, permit the parties to examine this issue further and to present their respective arguments concerning these issues in due course before the courts.

Please advise if Derse has agreed to this including its obligation to maintain all evidence.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

*Patrick C. Keeley /* tw

Patrick C. Keeley

cc:     Bernard Bobber
        Gene Faut
        Nelson Corazzari
J:\LIT\3DEXHIB\Derse Wis\L\ThomureAug21.doctajdv082108tkw082108

LAW OFFICES
### *Piccione, Keeley & Associates, Ltd.*

JOHN J. PICCIONE
PATRICK C. KEELEY
THOMAS A. JACKSON

122C South County Farm Road
Wheaton, Illinois 60187-4523

TELEPHONE: 630/653-8000
TELECOPIER: 630/653-8029

E-MAIL:

info@pkalaw.com

ALISON S. FRANKLIN
JASON T. SINGLETON
COURTNEY BOBOSKY
JENNIFER PICCIONE

MARK W. TADER
LYNN R. CONRAD

August 22, 2008

### PRIVILEGED COMMUNICATION FOR SETTLEMENT PURPOSES ONLY

John Thomure
Michael Best & Friedrich LLP
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202-4108
jcthomure@michaelbest.com

Daniel A. Kaufman
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue
Suite 2000
Chicago, IL 60601-6710
dakaufman@michaelbest.com

James Troupis
Michael Best & Friedrich LLP
1 S. Pinckney Street
Suite 700
Madison, WI 53701-1806
jrtroupis@michaelbest.com

Re:   **Derse, Inc. v. Nelson Corazzari**
      **Case No. 08 CV 2909**

      **Derse, Inc. v. 3D Exhibits, Inc.**
      **Case No. 08 CV 4722**

Dear Gentlemen:

To follow up on our recent telephone conversations on August 21, 2008 and today, Nelson will deliver his computer and other electronic devices we discussed to Foley & Lardner in Wisconsin on Saturday morning at 9:00 a.m. for purposes of imaging.  Our forensic expert, Kevin Baker of Huron Consulting Group, will image the items at Foley & Lardner on Saturday and on Monday (11:00 a.m.) he will also image 3D's laptop computer that has been used by Nelson over the last three weeks.  As we discussed, Derse's forensic expert is welcome to observe the imaging process, but he may not read or view any



August 22, 2008
Page 2

information on these devices.  Please advise if Derse's forensic expert will be present at Foley or 3D, and provide me his name so I can notify Foley and 3D. We agree that Foley & Lardner would hold the images of the devices in Wisconsin (and Huron will also hold a copy of said images) pending agreement of the parties or Order of Court.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

*Patrick C. Keeley* / tw

Patrick C. Keeley

cc:     Bernard Bobber
        Gene Faut
        Nelson Corazzari

J:\LIT\3DEXHIB\Derse Wis\L\allatty382208.docPK:fy82208tkw082208