IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08CV 4722 |
| | ) | |
| 3D EXHIBITS, INC., | ) | Judge Holderman |
| | ) | |
| Defendant. | ) | Magistrate Judge Mason |

## <u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY</u>

NOW COMES Defendant 3D EXHIBITS, INC., by and through its attorneys, PICCIONE, KEELEY & ASSOCIATES, LTD., and moves this Honorable Court:

1.    To dismiss the Complaint pursuant to Fed. Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim against the Defendant for which relief can be granted.

2.    In the alternative, Defendant moves, pursuant to Fed. Rule of Civil Procedure 40, to stay this action because of a parallel state court proceeding.  The Affidavit of Patrick C. Keeley in support of the Motion to Stay is attached hereto and incorporated herein by reference.

3.    A memorandum of law in support of the Motion to Dismiss, or, in the alternative, to Stay the Proceeding is attached hereto and incorporated herein by reference.

Respectfully Submitted:

    ___/s/Patrick C. Keeley_____
Patrick C. Keeley
One of the attorneys for 3D Exhibits, Inc.

PICCIONE, KEELEY & ASSOCIATES, LTD.
Attorneys of record for 3D Exhibits, Inc.

Patrick C. Keeley
Thomas A. Jackson
Jason Singleton
PICCIONE, KEELEY & ASSOCIATES, LTD
122C South County Farm Road
Wheaton, IL 60187
630-653-8000

J:\LIT\3DEXHIBI\Derse III\P\MTD.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Derse, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 08 CV 4722 |
| | ) | |
| 3D Exhibits, Inc. | ) | Judge James F. Holderman |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY

# EXHIBIT A
# AFFIDAVIT OF PATRICK C. KEELEY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERSE, INC.,                              )
                                          )
        Plaintiff,                        )
v.                                        )        No. 08CV 4722
                                          )
3D EXHIBITS, INC.,                        )        Judge Holderman
                                          )
        Defendant.                        )        Magistrate Judge Mason

<u>**AFFIDAVIT OF PATRICK C. KEELEY**</u>
<u>**IN SUPPORT OF MOTION TO STAY**</u>

1.      Patrick C. Keeley, an attorney licensed to practice law in the State of Illinois, being
first duly sworn, deposes and says:

2.      I am the attorney for Defendant 3D Exhibits, Inc. ("3D") in the above-entitled
cause.

3.      The Complaint in this cause is for Misappropriation of Trade Secrets (Count I),
Inducement of Breach of Fiduciary Duty and Common Law Duties (Count II); Tortious
Interference with Prospective Business Advantage (Count III), and Civil Conspiracy to
Commit Tortious Interference (Count IV).

4.      The relief sought, includes, *inter alia*, damages, the return of Plaintiff's documents
and /or information which Plaintiff alleges may be in 3D's possession due to 3D's
employment of Plaintiff's former employee, Nelson Corazzari, and an order prohibiting 3D
from using or disclosing Plaintiff's alleged trade secrets.

5.      However, Plaintiff has sued Nelson Corazzari in the Circuit Court of Waukesha
County, Wisconsin, based upon the same operative facts and seeking the same relief. That
action alleges Breach of Fiduciary and Common Law Duties, Conversion, Destruction of

1



Property, Interference with Corporate Opportunities, Claim for Relief Under Wis. Stat., Sec. 895.446- Civil Theft, Claim for Relief Under Wis. Stat., Sec. 943.70 – Unauthorized Computer Access, Trade Secret Thef Under Wis. Stat. Sec. 134.90, Unfair Trade Practices, Tortious Interference with Business Relations and Advantage, Replevin, and Declaratory Judgment and Injunctive Relief.  A copy of that Complaint filed in the Wisconsin state court action is attached to 3D's Motion to Strike, or in the Alternative, to Deny or Stay, Plaintiff's Motion for Preservation of Evidence, or in the Alternative, for Expedited Discovery, as Exhibit B and is incorporated herein by reference.

6.    The claims for relief in the two actions are parallel as set forth in the Memorandum of Law attached to Defendant's Motion to Dismiss or in the Alternative to Stay Proceeding.

Respectfully Submitted:

Patrick C. Keeley
One of the attorneys for 3D Exhibits, Inc.

PICCIONE, KEELEY & ASSOCIATES, LTD.
Attorneys of record for 3D Exhibits, Inc.


Patrick C. Keeley
Thomas A. Jackson
Jason Singleton
PICCIONE, KEELEY & ASSOCIATES, LTD
122C South County Farm Road
Wheaton, IL 60187
630-653-8000


J:\LIT\3DEXHIBIT\Derse IIRP\PKA aff staymot.doc

2

## <u>VERIFICATION</u>

I, Patrick C. Keeley, verify under penalty of perjury that the foregoing is true and correct.

Executed on: _____8/28/08_____

_____
Patrick C. Keeley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Derse, Inc.,                              )
                                          )
         Plaintiff,                       )
                                          )     Case No. 08 CV 4722
v.                                        )
                                          )
3D Exhibits, Inc.                         )     Judge James F. Holderman
                                          )
         Defendant.                       )

**DEFENDANT'S MOTION TO DISMISS, OR IN THE
ALTERNATIVE, TO STAY**

# EXHIBIT B
# MEMORANDUM OF LAW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08CV 4722 |
| | ) | |
| 3D EXHIBITS, INC., | ) | Judge Holderman |
| | ) | |
| Defendant. | ) | Magistrate Judge Mason |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION, OR, IN THE ALTERNATIVE, TO STAY THE ACTION

### Introduction

Plaintiff, Derse, Inc. ("Plaintiff"), has sued Defendant 3D Exhibits, Inc. ("3D"), for Misappropriation of Trade Secrets (Count I), Inducement of Breach of Fiduciary Duty and Common Law Duties (Count II); Tortious Interference with Prospective Business Advantage (Count III), and Civil Conspiracy to Commit Tortious Interference (Count IV). This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. Sec. 1332.

Plaintiff's Complaint is nothing more than an improper attempt to stretch the facts of the state law case pending against an individual former employee, Nelson Corazzari ("Corazzari"), in a Wisconsin state court action, into a claim against 3D, Corazzari's new employer. Further, Plaintiff seeks to make the case a federal case when it is not one. The gist of Plaintiff's claim against 3D is that Corazzari allegedly took confidential information and trade secrets belonging to Plaintiff while in Plaintiff's employ; however, Plaintiff fails to either describe or identify such information, or allege that 3D either improperly took or has received or used any such information, or otherwise state a claim against 3D for misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA"). Even under the notice pleading standard, Plaintiff also fails to allege the necessary elements of its claims in Counts II to IV of the Complaint; moreover, such claims are in fact pre-



empted by the ITSA. For those reasons, the Complaint fails to state a claim on which relief may be granted and should be dismissed pursuant to Fed. Rule of Civ. P 12(b)(6). Even if allegations were made to state a claim against 3D, Plaintiff's Complaint, based solely upon diversity jurisdiction, is duplicative and improper; it is simply an aggressive litigation tactic seeking to cause the loss of legal resources (both to the parties and the Courts) in an effort to harass, retaliate and seek the proverbial "two bites at the apple." 3D does business and is amenable to suit in Wisconsin, the jurisdiction in which the state law claims against Corazzari are pending. In the event this Court does not grant 3D's Motion to Dismiss, this action against 3D, which is based upon the same operative facts alleged against Corazzari in the Wisconsin state court action, should be stayed pending resolution of the state court action.[1]

## **Allegations of the Complaint**

There are simply few factual allegations involving 3D in the Complaint, and those alleged do not relate to or plead actionable conduct by 3D. The first twenty-five paragraphs of the Complaint are aimed solely at Corazzari, who is not a defendant herein, and relate to solely to his actions while employed by Plaintiff. In Paragraphs 26 – 40, Plaintiff alleges that 3D has solicited at-will employees to leave Plaintiff's employ and work for 3D. Then, in the specific counts against 3D, Plaintiff's allegations against 3D are simply conclusory and devoid of factual support:

**Count I:** Plaintiff does not allege that 3D has received or used its trade secrets, but alleges that Corazzari's employment will result in the inevitable disclosure of (unidentified) trade secrets to 3D, although Plaintiff has pleaded insufficient facts to invoke that doctrine.

---

[1] Plaintiff's state law Complaint against Corazzari, pending in the Circuit Court of Waukesha County, alleges Breach of Fiduciary and Common Law Duties, Conversion, Destruction of Property, Interference with Corporate Opportunities, Claim for Relief Under Wis. Stat., Sec. 895.446- Civil Theft, Claim for Relief Under Wis. Stat., Sec. 943.70 – Unauthorized Computer Access, Trade Secret Thef Under Wis. Stat. Sec. 134.90, Unfair Trade Practices, Tortious Interference with Business Relations and Advantage, Replevin, and Declaratory Judgment and Injunctive Relief. A copy of the Complaint filed in Wisconsin state court is attached to the Affidavit of Patrick C. Keeley, filed in support of Defendant's Motion to Strike or in the Alternative, to Deny or Stay, Plaintiff's Motion for Preservation of Evidence, or In the Alternative, For Expedited Discovery. ("Defendant's Motion to Strike").

**Count II:**  Plaintiff does not allege facts, but claims that 3D (a) "colluded" with Corazzari "in committing the breach of his fiduciary and common law duties owed to Derse," (Para. 64), (b) upon information and belief "induced and knowingly participated in Corazzari's breach of his fiduciary and common law duties owed to Derse," (Para. 65) and (c) "knew or should have known" that Corazzari's conduct was a breach of his fiduciary duties to Derse (Para. 66).

**Count III:**  Plaintiff alleges without identifying specific customers and based upon 3D's hiring of at-will employees, that 3D has interfered with Derse's present and prospective contractual and business relationships.

**Count IV:**  Plaintiff's allegations of conspiracy do not meet the heightened pleading requirements pursuant to Fed. Rule Civil Procedure 9(b) to adequately allege any kind of conspiratorial agreement. Rather, Plaintiff merely concludes that 3D and Corazzari "have knowingly and voluntarily agreed to conspire to build 3D's business unlawfully and to damage Derse's business through unlawful means."

As the Supreme Court recently noted, in order to survive a motion to dismiss, a plaintiff must allege enough facts to state a "claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007).  There, the Supreme Court found that the plaintiffs in an antitrust case had not "nudged their claims across the line from conceivable to plausible," so that their Complaint was properly dismissed.  The same is true here. Plaintiff's claims against 3D simply do not cross the line from conceivable to plausible, and must be dismissed.

I.      **Plaintiff's Complaint Should be Dismissed for Failure to State A Claim**

1.      Plaintiff Fails to State a Claim for Misappropriation of Trade Secrets Pursuant to the Illinois Trade Secrets Act.

3

In order to state a claim for misappropriation of trade secrets under Illinois law, a Complaint must allege 1) a trade secret, 2) was misappropriated and 3) used by defendant. ***AutoMed Technologies, Inc. v. Eller,*** 160 F.Supp.2d 915, 920 (N.D. Ill. 2001). Here, in the first place, the Plaintiff has not identified the information which it maintains constitute its trade secrets.

The Illinois Trade Secrets Act, 765 ILCS 1065/1 et.seq., defines a "Trade secret" as:

> "[I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data or list of actual or potential customers or suppliers, that:
>
> (1) Is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."

Here, the Plaintiff's allegations are general and fail to identify any specific confidential information which either constitutes a trade secret or which was allegedly misappropriated by Corazzari (or for that matter, 3D). Plaintiff alleges only that: "the books and records of Derse, the confidential information contained therein, and the Derse customer account information, including buying history and preferences, are trade secrets of Derse subject to protection under the Illinois Trade Secrets Act." (Para. 7"). Further, Derse claims that customer information includes a "compilation of information, including listing of names, addresses and telephone numbers, buying history and preferences of Derse clients, as well as Derse financial and historical information, all of which are used in Derse's business and give Derse competitive advantage over other competitors who do not know the contents of this information...."(Para. 8).[2]

As case law makes clear, the Seventh Circuit "has required a degree of specificity when defining certain pieces of information as trade secrets. ***Thermal Zone Products Corp. v.***

---

[2] Derse has not alleged that Corazzari appropriated any specific confidential information, but rather appears, by its Motion for Expedited Discovery, to be fishing for such information.

*Echo Engineering, Ltd.*, 1993 WL 358148, p. 4 (N.D. Ill. 1993).  There, the plaintiff's claims, like Plaintiff's here, were broad and vague, referring to 3,000 pages of technical information, including drawings, plans and specifications for manufacture of their ovens. In dismissing the plaintiff's claim, the Court held that more specific allegations were required to plead the existence of a trade secret under the ITSA:

> "In order for this court to attempt to categorize the alleged material as a trade secret, it is necessary for the court to be directed as to how this information is unique and protected.  The necessary detail required in pleading cause of action under this Act is not present in the complaint."
> *Id.*

See also, e.g., *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F. 2d 1263, 1266 (7th Cir. 1992)("It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets."); *AMP Inc. v. Fleischhacker*, 823 F. 2d 1199, 1203 (7th Cir. 1987).[3](There, the plaintiff had "consistently failed... to identify any particularized trade secrets actually at risk...," noting that "[o]ther courts have warned plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets.")

In the case at bar, as in the *Thermal Zone* case,  the Plaintiff has only provided generalized categories and conclusions, which are insufficient under the ITSA, even under federal pleading rules.  *Id.*

 Moreover, Plaintiff has not alleged that 3D has received and used any such information in its business.    Rather, Plaintiff's allegations amount to a claim that, if Corazzari misappropriated trade secrets or other confidential information, that Corazzari and/or 3D "could misuse the information... and [Plaintiff] fears that he will."  *Complete Business Solutions, Inc. v. Mauro*, 2001 WL 290196, p. 5 (N.D. Ill. 2001) This is insufficient.  *Id.*

---

[3] Although *AMP* predates the ITSA, the Seventh Circuit has stated that the ITSA codifies, rather than modifies, the common law doctrine to that AP continues to reflect the proper standard under Illinois' statutory scheme.  See, e.g., *Pepsico, Inc. v. Redmond*, 54 F. 3d 1262 (7th Cir. 1995).

In *Mauro*, the plaintiff pleaded only, in a conclusory fashion, that "'[Mauro has used and/or will necessarily be called upon to use and disclose such information in improperly soliciting [the client]." *Id.*, n. 7. As the Court there noted, there were no allegations that Mr. Mauro had in fact used trade secrets. Similarly, here, Plaintiff alleges only that "3D has acquired, or necessarily will acquire, Derse's trade secrets, resulting in misappropriation under the Illinois Trade Secrets Act ("ITSA"), and 3D has used and/or will use Derse's trade secrets to Derse's detriment. (Para. 49). As in *Mauro*, the claim must fail.

Having failed to plead the use by 3D of any trade secrets, Plaintiff is left with its purported claim against 3D for "inevitable disclosure," under the overly used (or, more aptly, misused) doctrine set forth in *Pepsico, Inc. v. Redmond,* 54 F.3d 1262 (7th Cir. 1995). Plaintiff alleges:

> "Given that 3D is a direct competitor of Derse, and that Corazarri is performing the same or similar duties with 3D that he performed while he was employed with Derse, Corazzari's employment with 3D, and his continued employment with 3D, have resulted and/or threaten to result in, and necessarily create the likelihood of, the inevitable disclosure of Derse's trade secrets to 3D." Complaint (Para. 48).

Thus, in Paragraph 48, Plaintiffs are relying wholly or in part upon the "inevitable disclosure" doctrine as it relates to trade secrets and confidential information. However, the "inevitable disclosure" doctrine does not apply here, because, as in *Mauro*, there is no allegation that Corazzari was precluded from competing with Plaintiff after he resigned his employment. *Mauro*, *supra*, at p. 6. Moreover, to invoke the "inevitable disclosure doctrine", the Complaint must do more than make conclusory allegations that the employee will necessarily use trade secrets in his new position. *AutoMed Technologies, Inc., supra, at 921; Mauro, supra, at p. 6.* Rather, the Complaint must allege facts indicating that the defendant in fact threatened misappropriation, or that it was inevitable that such misappropriation or disclosure would occur. Here, as in *Mauro*, there are no such factual allegations and Count I must be dismissed.

*Pepsico* itself demonstrates the reluctance with which Courts apply the doctrine, and the circumstances which must exist in order for the doctrine to apply. There, Redmond, the employee, had access both to Pepsico's Strategic Plan, a three-year plan which outlined Pepsico's plans to compete, along with its strategies for manufacturing, production, marketing, packaging and distribution for the next three years, along with the company's annual Operating Plan, and would be in a position to use that information in his new position with a competitor. More importantly, however, was the determination that Redmond had been dishonest and therefore could not be trusted not to use the information in his new position:

> "Raymond's lack of forthrightness on some occasions, and out and out lies on others, in the period between the time he accepted the position with defendant Quaker and when he informed plaintiff that he had accepted that position leads the court to conclude that defendant Redmond could not be trusted to act with the necessary sensitivity and good faith under circumstances in which the other practical verification that he was not using plaintiff's secrets would be defendant Redmond's word to that effect." *Id.* at 1270.

To the contrary, there are no similar allegations in Plaintiff's Complaint.

      2.      Plaintiff Fails to State a Claim for Inducement of Breach of Fiduciary Duty and Common Law Claims

After re-alleging the general allegations and the allegations of Count I (Misappropriation of Trade Secrets), Plaintiff states:

> "While employed by Derse, Corazzari breached his duties to Derse by, among other things, procuring the means to compete with Derse through the appropriation of Derse's property… improperly entering into secret dealings with 3D and others to *benefit himself* and/or his outside business opportunities, misappropriating property of Derse and undertaking the other wrongful acts described herein." (Para. 59).

Plaintiff alleges further that Corazzari "secretly planned and recruited others to leave the employ of Derse and become employees of 3D and schemed to deprive Derse of its clients, records and trade secrets." (Para. 61).

The only allegations against 3D are not facts, but mere naked conclusions:   that 3D "colluded" with Corazzari in committing Corazzari's breach of his fiduciary duty, and, upon information and belief "induced and knowingly participating in Corazzari's breach…" and "knew or should have known that Corazzari's unlawful conduct for his own benefit and the benefit of 3D constituted a violation of his fiduciary… duties." Finally, Plaintiff alleges that 3D benefited in the alleged breach by Corazzari in that it "unlawfully obtained Derse's confidential information, trade secrets and business opportunities." (Paras 64-67).   However, not only are the allegations of the Complaint vague as to the information Corazzari allegedly took, and what information constituted a trade secret, but also completely fails to allege any wrongdoing by 3D.

In order to state a claim for inducement of breach of fiduciary duty, a plaintiff must allege at least some facts establishing that the defendant 1) colluded with a fiduciary in committing a breach; 2) knowingly participated in or induced the breach; and 3) knowingly accepted the benefits resulting from that breach. **Borsellino v. Goldman Sachs Group, Inc.,** 477 F. 3d 502, 509 (7th Cir. 2007).  In **Borsellino**, the claim failed because of an overall lack of particularity in the allegations of the claim.  Moreover, in the case at bar, "there were no allegations of *active misbehavior* by the defendant." *Id.*  (emphasis added).   Similarly, here, the claim against 3D must be dismissed.

3.    Plaintiff Fails to State a Claim for Tortious Interference with Prospective Business Advantage

In Count III, Plaintiff alleges, without identifying any specific customers or clients, that 3D has contacted clients and attempted to persuade them to do business with 3D rather than Plaintiff, that it has interfered with Plaintiff's at-will employment relationships, and that, through its employment of Corazzari and other former Derse employees, 3D has "knowledge and possession of" Derse's confidential information and trade secrets so that it has an unfair competitive advantage. (Paras.69-75). Nowhere does Plaintiff allege specific valid business relationships, *unjustified* interference by 3D, a resulting breach or termination of any expectancy, or damage to

Plaintiff as a result of 3D's alleged interference, all of which are required elements of the tort.[4] Said another way, Companies are privileged to compete and to hire at-will employees, absent a showing of malice, which is not alleged against 3D here. See, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F. 3d 376 (7th Cir. 2003). "'The privilege to engage in business and to compete allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will.'" *Id.*, at 398, *quoting Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 663 N.E. 2d 1, 7-8 (1995).

Accordingly, a Plaintiff will generally not have a cause of action for interference with business relationships against a *bona fide* competitor unless circumstance indicates unfair competition. *Dames & Moore v. Baxter & Woodman, Inc.*, 21 F.Supp.2d 817 (N.D. Ill. 1998):

> "An individual with a prospective relationship has a mere expectancy of future economic gain; a party to a contract has a certain and enforceable expectation of receiving the benefits of the contract. When a business relationship affords parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the right of others. They, therefore, have no cause of action against a bonafide competitor unless the circumstances indicate unfair competition, i.e., an unprivileged interference with prospective advantage. As the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases."

Here, as the *Baxter* case recognizes, hiring at-will employees of a rival is generally permissible; additionally, here, there are no allegations of "wrongful means" by 3D which created impermissible or unfair competition by 3D. See also, e.g., *Europlast, Limited v. Oak Switch*

---

[4] To plead a claim for the tort, Plaintiff must allege: 1) a reasonable expectancy of entering into a valid business relationship, 2) the defendant's knowledge of the expectancy 3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and 4) damage to the plaintiff resulting from the defendant's interference. See, e.g., *Borsellino, supra.*

*Systems, Incorporated*, 10 F. 3d 1266, 1274 (7th Cir. 1993)(recognizing Rest. 2d of Torts, Sec. 768, comment i, permitting a competitor to woo an at-will employee from his employer, absent improper means such as inducing an employee to divulge confidential information or to undermine his employer's best interests).

Once again, the Complaint is devoid of such allegations that 3D induced or otherwise participated in any wrongful conduct.  Rather, the factual allegations against 3D are merely that 3D hired Corazzari and several other employees over a period of time, along with conclusory allegations that Corazzari had access to Plaintiff's confidential information. The Court in *AMP*, supra, held that "the hiring of a close competitor's executives is a usual and permissible practice in any industry," quoting Judge Learned Hand:  "'[I]t has never been thought actionable to take away another's employee, when the defendant wants to use him in his own business, however much the plaintiff must suffer.'"  *Id*. at 1205, n. 3.

 Additionally,  under Illinois law, in order to establish the reasonable expectancy element of a claim for tortious interference with business relationships, Plaintiffs must allege that it had more than mere hope of such a relationship and requires Plaintiffs to specifically identify third parties who actually contemplated entering into business relationships with Plaintiffs.  *Profile Products, LLC v. Soil Management Technologies, Inc.,* 155 F.Supp.2d 880 (N.D. Ill. 2001); *Intervisual Communications, Inc. v. Volkert,* 975 F.Supp. 1092 (N.D. Ill. 1997).  Here, Plaintiffs fail to allege sufficient facts to satisfy the reasonable expectation of entering into a valid business relationship element for a cause of action for tortious interference with business relationships as Plaintiffs fail to allege any facts to specifically identify third parties who actually contemplated entering into business relationships with the Plaintiff, and who then did not enter into such business with Plaintiff as a result of 3D's alleged unjustified interference.

Finally, there are no allegations that Corazzari or any other former employee caused a client or customer of Plaintiff to cease doing business with Plaintiff.  Absent such allegations, the claim must fail.  *Genender International, Inc. v. Skagen Designs, Ltd*., Slip Op., 2008 WL 2521894 (N. D. Ill. 2009); *Poth v. Paschen Contractors, Inc*., 1986 WL 15081 (N.D. Ill. 1986)("The allegations that Paschen lost key employees and incurred injury to its business reputation do not

support a claim that Paschen lost legitimate expectancies of valid business relationships with other firms in the construction industry.")

4.    Plaintiff Fails to State a Claim for Civil Conspiracy

Plaintiff, again incorporating prior allegations, claims conclusorily that 3D and Corazzari "have knowingly and voluntarily agreed to conspire to build 3D's business unlawfully and to damage Derse's business through unlawful means." (Para. 79.) Once more, the allegations of wrongful conduct are based on the alleged "disclosure and use, and the additional inevitable disclosure, of Derse's confidential information and trade secrets..." (Para. 78).

In Illinois, to establish a cause of action for civil conspiracy, a plaintiff must plead and eventually prove 1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and 2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *Borsellino*, supra, at 508.  Moreover, a defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy. *Id.* Here, Plaintiff has failed to allege facts describing an agreement, and any tortious act by 3D which resulted in injury to Plaintiff. Additionally, Plaintiff's allegations are too conclusory to state a claim. *Cohabaco Cigar Company v. Unites States Tobacco Company*, 1998 WL 773696 (N.D. Ill. 1998).  Civil conspiracy claims must be pled with specificity, and must identify, with particularity, the nature of the conspiracy and each defendant's role in the conspiracy.  Most importantly, the plaintiff must allege some particular facts sufficient to establish an agreement exists between the alleged conspirators to inflict the alleged wrong; conclusory allegations of conspiracy are insufficient to satisfy Rule 9(b)'s specificity requirement. *Id*. at 6.   Where, as here, a plaintiff has failed to meet those requirements, the claim must be dismissed. *Id.*

5.    Notwithstanding the substantive arguments set forth above, in any event, Counts II through IV are Preempted by the ITSA and Must be Dismissed on that Basis

The ITSA provides in pertinent part:

11

> "This act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS § 1065/8(a).

In short, this provision eliminates all common law claims based on conduct which might support an ITSA action:

> "In other words, if the operative facts are arguably cognizable under the ITSA, *any common law claim* that might have been available on those facts… now no longer exists in Illinois." *Fox Controls, Inc. v. Honeywell, Inc.*, 2002 WL 1949723, p. 3 (N.D. Ill. 2002)(emphasis added)(dismissing claims including breach of fiduciary duty, tortious interference with business advantage, among others, because they were preempted by ITSA).

As set forth above, the allegations of Counts II through IV rely on Corazzari's alleged misappropriation of trade secrets. (Count II, para. 59, 60, 61, and 62; Count III, para. 75; Count IV, para. 78.) Accordingly, Counts II, III and IV are preempted and should be dismissed. See, e.g., *Rotec Industries, Inc. v. Mitsubishi Corp.,* 179 F.Supp.2d 885 (CD. Ill. 2002); *Labor Ready, Inc. v. Williams Staffing, LLC,* 149 F.Supp.2d 398 (N.D. Ill. 2001). (Claim for tortious interference with contractual relationship was pre-empted to the extent it was based on misappropriation of trade secrets; granting defendant's motion to dismiss.); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953 (N.D. Ill. 2002)(civil conspiracy claim preempted by ITSA to the extent it is based on allegations of trade secret misappropriation.)

Finally, Plaintiff's Prayer for Relief, including requests for punitive damages and attorneys' fees (Paras. H and I, respectively) are improper and should be stricken. Plaintiff has not alleged willful and malicious misappropriation, which must be alleged and established to support either type of relief. 765 ILCS 1065/4 ("(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)."; 765 ILCS 1065/5 ("If… (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's

fees to the prevailing party); See also, *Chemetall GMBH v. ZR Energy, Inc.*, 2002 WL 23826 (N.D. Ill. 2002)(noting that a court has discretion to award attorneys fees under the ITSA only where there is a specific finding of "'willful and malicious misappropriation'").

In conclusion, a reading of the Complaint, even under the notice pleading standard, results in at best conclusory allegations against Corazzari and no substantive allegations against 3D. This is because Plaintiff has no evidence to support such allegations and that is why Plaintiff has attempted to use this case and its Motion for Expedited Discovery or in the Alternative to Preserve Evidence to go fishing for such evidence. See, Defendant's Motion to Strike. Plaintiff's tactics are improper and the Complaint should be dismissed.

## II.    In the Alternative, this Action Should be Stayed

1.    A Parallel Proceeding is Pending in State Court and Exceptional Circumstances Warrant a Stay

Even if 3D's Motion to Dismiss is denied, this case is properly stayed pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976). Abstention pursuant to the *Colorado River* doctrine is appropriate when considerations of "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" support abstention in favor of a pending state court case. *The Proctor & Gamble Company v. Alberto-Culver Co.,* 1999 WL 319224 (N.D. Ill. 1999), *quoting, Colorado River*.

In order to apply the doctrine, a federal court proceeding must be parallel to the state court proceeding; however, the actions need not be identical. Here, the interests of 3D and Nelson Corazzari, the defendant in the state court litigation are congruent, as they share "substantially similar litigation interests." This is true because 3D is Corazzari's employer and both 3D and Corazzari want Corazzari to be able to "work, unfettered, as he was hired to do". *Id*., at 4. Accordingly, the proceedings, based upon the same facts, are parallel.

13

Secondly, the relevant factors indicate exceptional circumstances exist to warrant abstention.  The Supreme Court has enumerated the factors to be considered:    1) whether the court has assumed jurisdiction over a res; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which the state and federal courts obtained jurisdiction; and 5) whether federal law provides the rule of decision.  *Id.* at 6.  Additionally, the U.S. Court of Appeals for the Seventh Circuit has directed consideration of the following additional factors:  1) the adequacy of the state court to protect the plaintiff's rights; 2) the relative progress of the state and federal proceedings; 3) the presence or absence of concurrent jurisdiction; 4) the availability of removal of the state court action; and 5) the vexatious or contrived nature of the federal action.  *Id.* (citations omitted).

Here, nearly all of the factors weigh in favor of the stay.  The Court has not assumed jurisdiction over a res, the state court obtained jurisdiction on the same date but has already ruled on a motion identical to the one now pending before this Court. Accordingly, the importance of avoiding piecemeal litigation and redundancy, particularly weighs in favor of abstention.  *Clark v. Lacy*, 376 F. 3d 682 (7th Cir. 2004). As in *Clark*, absent a stay, the two actions would proceed simultaneously,

> "duplicating the amount of judicial resources required to reach a resolution….[T]he two courts would oversee similar pre-trial motions and discovery matters and two different triers of fact would be asked to consider the same issues, evidence and witnesses. Our Court has held that this sort of redundancy counsels in favor of a stay." *Id.* at 687.

The reality of this concern is demonstrated by the Plaintiff's presentation of the two motions for expedited discovery and preservation of evidence, one pending in this Court and one already presented (and denied) in the Wisconsin action.  There is no allegation here that the Wisconsin court is unable to adequately protect the Plaintiff's rights, and this lawsuit, based solely upon state law, does not present a situation where there is any interest, let alone a strong federal interest in federal court adjudication.  See, e.g., *Flip Side Inc. v. Chicago Tribune Co.*, 1989 WL 2044 (N.D. Ill. 1989).  The federal forum is inconvenient to the extent the action against 3D could have been filed in the state court action, pending against its employee, and the fact that it

14

wasn't is the Plaintiff's doing. *Id.* Accordingly, none of the factors enumerated by the Supreme Court weigh in favor of proceeding with this action, and a majority of the factors referenced by the Seventh Circuit support abstention. In addition to those previously  discussed, there is no basis for removal of Plaintiff's state law action.  See, generally, 28 U.S.C. Sec. 1441. Finally, to file a federal court case, based upon diversity jurisdiction against 3D when it was subject to suit in Wisconsin, and to require it to defend the two actions simultaneously, at best is contrived (and at worst vexatious) conduct which weighs in favor of abstention in this case.

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed, or, in the alternative stayed.

_____
Patrick C. Keeley
One of the attorneys for 3D Exhibits, Inc.

PICCIONE, KEELEY & ASSOCIATES, LTD.
Attorneys of record for 3D Exhibits, Inc.

Patrick C. Keeley
Thomas A. Jackson
Jason Singleton
PICCIONE, KEELEY & ASSOCIATES, LTD
122C South County Farm Road
Wheaton, IL 60187
630-653-8000

J:\LIT\3DEXHIBI\Derse III\P\mtd memo law.doc